# FRANK C. LYDIARD AND OTHERS v. ALMA V. COFFEE AND OTHERS.[1]

May 28, 1926.

No. 25,238.

**Findings sustained.**

    1. The findings are sustained by the evidence.

**When assignment by promisee is without prejudice to set-off or defense otherwise available to promisor.**

    2. Under G. S. 1923, § 9166, in the absence of notice to the promisor of an assignment by the promisee of his rights under a contract between the parties, or proof of knowledge on the part of the promisor of facts which should have put him on inquiry, the assignment is without prejudice to any set-off or defense which would have been available to the promisor had the assignment not been made, and the burden of proving actual or constructive notice rests upon the assignee.

**Promisor not prevented from taking advantage of section 9166.**

    3. The fact that the subject matter of the contract was land owned by the promisor's wife did not prevent him from taking advantage of the statutory provision for notice.

    Appeal and Error, 3 C. J. p. 1333 n. 54.
    Assignments, 5 C. J. p. 963 n. 28; p. 1020 n. 52.
    Escrows, 21 C. J. p. 895 n. 59.

Action in the district court for Hennepin county to compel delivery of a deed by the defendant trust company to plaintiff Lydiard. The matter was heard by Baldwin, J., who ordered judgment in favor of Alma V. Coffee and C. C. Coffee. Plaintiffs appealed from an order denying their motion for a new trial. Affirmed.

*W. L. Hursh*, for appellants.
*Ueland & Ueland*, for respondents.

    [1]Reported in 209 N. W. 263.

LEES, C.

This case was here before on an appeal from an order sustaining a demurrer to the complaint. See 158 Minn. 520, 198 N. W. 140.

The purpose of the action is to compel the defendant trust company to deliver to the plaintiff Lydiard a deed, executed by the defendants Dr. C. C. Coffee and his wife, Alma V., and deposited in escrow, and to pay to Lydiard the proceeds of the subsequent sale of one of the lots described in the deed. Dr. and Mrs. Coffee will hereafter be referred to as defendants, and they and the plaintiff Lydiard are the real parties in interest. The principal issues of fact are whether the plaintiffs Skarp and Dickson are indebted to Dr. Coffee and if they are whether the trust company holds the deed as security for the debt.

The trial court found in defendants' favor on both issues and determined that the amount due from Skarp and Dickson was $2,038, with interest from May 25, 1918, plus taxes paid by defendants and interest thereon. Upon the application of the plaintiffs, some amendments to the findings were made, but their motion for a new trial was denied and they appealed.

The record discloses without much dispute facts which may be summarized as follows: Mrs. Coffee held the title to a tract of land in Shadywood near the channel connecting Crystal Bay with the west arm of Lake Minnetonka. A county road crossed the land and was carried over the channel by a bridge which Hennepin county was about to rebuild. The defendants believed that the value of their property would be enhanced if the new bridge was located about 100 feet west of the old one and travel thus diverted to a street in the plat of Shadywood west of the road then in use. They employed the plaintiffs Skarp and Dickson to go to the county board and try to induce the members thereof to change the location of the bridge. If they succeeded they were to get five lots in Shadywood and a tract of unplatted marsh land nearby. Deeds of the property were to be executed to them or to any other person they might name, and defendants were to deposit the deeds in escrow with the trust company to be held until the bridge was completed and opened for

travel at the new location. Except for the omission of any mention of the deed of the marsh land, all these terms were set out in a contract in writing, executed by the parties on May 20, 1918, and designated in the record as Exhibit A.

Immediately thereafter Skarp and Dickson interviewed the members of the county board and, as a result of their proper and lawful intercessions, the board on May 22 resolved to change the location of the bridge as desired, provided the expense to the county did not exceed $1,500 and on condition that a satisfactory bond be furnished to indemnify the county from greater expense.

Skarp and Dickson learned that the total cost of the change would be $5,538 and that it would be necessary to raise $4,038 from private sources to bring about the result for which they were striving. On May 25 they approached Lydiard and ascertained that he would advance $2,000. Dickson then went to Dr. Coffee and got a certified check from him for $2,038. That check and one from Lydiard for $2,000 were obtained and turned over to the county auditor on May 25 and on the same day Skarp, Dickson and Dr. Coffee entered into a contract with the county which provided for the preparation of new plans and specifications for the bridge, a call for bids from contractors and the construction of the bridge at the new location upon the conditions heretofore mentioned. Shortly thereafter the required bond was furnished. The county cashed the checks, built the bridge and opened it for travel prior to November 1, 1919.

The deeds from the defendants were executed on May 25 and deposited with the trust company then or a few days later. At the request of Skarp and Dickson, Lydiard's name was inserted as grantee in the deed of the lots and the other deed was executed in blank. On May 27 Skarp and Dickson assigned their rights under Exhibit A to Lydiard, reserving a contingent interest in the proceeds of the sale of the lots.

One of the lots has been sold and the purchase price deposited with the trust company pursuant to a written contract to which plaintiffs and defendants are parties.

These are the mooted questions: (a) Did the defendants donate $2,038 to Hennepin county to procure the relocation of the bridge or did they loan that amount to Skarp and Dickson? (b) If the money was loaned, does the trust company hold the deeds as security for the debt? (c) Did the defendants have notice of the assignment to Lydiard?

Defendants both testified that the money was loaned, and put in evidence their Exhibit 2, which reads:

Minneapolis, Minn. June 7th, 1918.

"We hereby acknowledge that at our request, and for our use C. C. Coffee has deposited with the Auditor of Hennepin County a check for the sum of $2,038 for the purpose of changing the location of Bridge No. 15, and we agree to reimburse C. C. Coffee before certain deeds signed by him are turned over to us.

"F. A. Dickson."

Skarp and Dickson denied that the money was loaned, claiming that it was a donation made to secure the relocation of the bridge.

An examination of the evidence satisfies us that it supports the finding in defendants' favor on this issue. It follows that the other questions must be considered in the light of the fact that on May 25 Skarp and Dickson for their own purposes induced Dr. Coffee to advance $2,038 to Hennepin county and agreed to repay him. No definite time of payment being specified, the debt was payable immediately, under the rule expressed in Horn v. Hansen, 56 Minn. 43, 47, 57 N. W. 315, 22 L. R. A. 617.

Skarp and Dickson were jointly interested in the project. Each was bound by what the other did to bring it to a successful conclusion. Exhibit 2 is convincing evidence that the conditions of Exhibit A were modified when Dickson got the check from Dr. Coffee. The effect of the transaction was to give Dr. Coffee the right to retain control of both deeds as security for the repayment of the loan. Certainly Skarp and Dickson could not have obtained possession of either deed without paying their debt to Dr. Coffee.

Does Lydiard, as their assignee, occupy a better position? The trial court found that the loan was procured and the agreement to

repay it made before the deeds were deposited with the trust company and that defendants had no notice that Lydiard was about to acquire or had acquired Skarp and Dickson's rights under Exhibit A until a long time thereafter. If the finding stands, there is no foundation for the claim that by virtue of the assignment Lydiard acquired rights superior to those of his assignors.

G. S. 1923, § 9166, reads:

"If a thing in action be assigned, an action thereon by the assignee shall be without prejudice to any setoff or defense existing at the time or before notice of the assignment."

The statute puts upon the assignee the burden of bringing notice of the assignment home to the person against whom he has acquired a right of action if he would cut off any setoff or defense that person might assert as against the assignor. Linn v. Rugg, 19 Minn. 145 (181); Nielsen v. Albert Lea, 91 Minn. 388, 98 N. W. 195.

The evidence of notice may be circumstantial, for it is familiar law that a man may not shut his eyes and close his ears and say he had no notice when the circumstances are such as to put a reasonably prudent man upon inquiry which, if made, would have disclosed the fact of the assignment. In such circumstances there is constructive notice, which has the same effect as actual notice.

The evidence fails to show actual notice of the assignment. The gist of the argument in support of the claim of constructive notice is that, since the deed ran to Lydiard, it should be held as a matter of law that Dr. Coffee was put upon inquiry. We are not of that opinion. Exhibit A expressly provides that the deed of the lots shall run to anyone whom Skarp and Dickson might designate as grantee. It is a matter of common knowledge that the grantee named in a deed does not invariably hold the title in his own right. For reasons of his own the true owner may not wish to reveal the actual state of facts. Under the circumstances of this case the trial court might conclude that Dr. Coffee had a right to assume that Skarp and Dickson were the true owners of the property. They were the only persons with whom he had dealt and he would be justified in the belief that they had taken the title in Lydiard's name merely as a matter of convenience.

It is contended that because the loan was made by Dr. Coffee, whereas the title to the property was held by his wife, he cannot take advantage of section 9166. The contention is not sustained. Dr. Coffee had an inchoate interest in the property, was a party to Exhibit A, and could be held to respond in damages if his wife failed to perform. For these reasons Carpenter v. Leonard, 5 Minn. 119 (155), is not in point. Nordsell v. Neilsen, 150 Minn. 224, 184 N. W. 1023, is more nearly applicable.

In a reply brief plaintiffs argue for the first time that the court erred in allowing interest on the loan from May 25, 1918. This point cannot be considered. It is not specifically covered by the assignments of error, and it is nowhere referred to or discussed in the original brief.

There are a number of assignments of error relative to the admission of evidence, but we find no prejudicial error in the rulings complained of.

The order denying a new trial is affirmed.