## PILLSBURY INVESTMENT COMPANY v. JOHN OTTO AND OTHERS.[1]

July 2, 1954.

No. 36,265.

---

[1]Reported in 65 N. W. (2d) 913.

*Samuel P. Halpern* and *Louis B. Schwartz,* for appellants.
*Robins, Davis & Lyons* and *Sidney S. Feinberg,* for respondent.

NELSON, JUSTICE.

Action in unlawful detainer to recover possession of a store described as 139 West Lake street, Minneapolis, after expiration of lease thereon. The premises were utilized by the lessee, defendant Joe Hackl, and his sublessee, defendant John Otto, as a "restaurant, cafe, tavern, or milk bar." The trial court determined that the lessee's option to renew the lease had not been exercised within the time provided therefor and ordered restitution. This is an appeal from the judgment entered pursuant thereto.

On September 29, 1948, a written lease covering the premises was made by Gallwin, Inc., owner of the structure in which the store is located, as lessor, and George B. Lee, as lessee, for a term of five years from October 1, 1948. Therein the lessee was granted an option to extend the lease for an additional five years from its expiration date, October 1, 1953, at an increased rental, provided written notice of such intent was given to the lessor at least six months prior to such expiration date.

Simultaneously with the execution of the lease, the parties entered into a conditional sales contract whereby Gallwin, Inc., sold to Lee for $20,000 certain restaurant equipment and fixtures located upon the leased premises which were to be used in the conduct of the business therein.

On May 7, 1949, for a valuable consideration, Lee transferred his interest as lessee and as purchaser in the conditional sales contract

to defendant Joe Hackl. On October 10, 1949, Gallwin, Inc., sold the premises, subject to the lease, to defendant Ambassador Finance Company, hereafter referred to as Ambassador, and simultaneously therewith assigned to the latter its interest in the lease and in the conditional sales contract. Immediately thereafter Gallwin, Inc., gave notice of such transfers and assignment to Hackl, who thereafter paid the rentals and installment due on the conditional sales contract to Ambassador.

In November 1949 Ambassador sold the premises subject to the lease under a contract for deed to Charles R. Hansen and simultaneously assigned to him lessor's interest in the lease but retained the vendor's interest in the conditional sales contract.

It does not appear that the contract for deed; the assignment of the lease; or other evidence of transfer of title to Hansen was ever placed of record. Neither he nor Ambassador ever advised Hackl, who was in possession, of such transfer or assignment, or that Hansen had an interest in the premises as lessor or otherwise. Hackl testified that he was unaware that the property had been sold to Hansen, and thereafter as before he paid all rentals, and all installments on the conditional sales contract to Ambassador in the belief that the latter still owned both the premises and the vendor's equity in the conditional sales contract.

On November 27, 1951, Hackl subleased the premises to defendant John Otto by written instrument wherein he granted Otto an option to extend the lease at an increased rental for an additional five years from October 1, 1953, provided Otto gave written notice of such intent at least seven months prior to that date. Hackl remained primarily liable for the rentals and thereafter continued to pay them and the installments on the conditional sales contract to Ambassador.

On March 18, 1953, more than six months prior to the expiration date of the lease, Hackl through his attorney, Samuel P. Halpern, wrote Ambassador as follows:

"Please be advised that as attorney and agent for Joe Hackl, who is the assignee of the lessee's interest in that certain lease dated

September 29, 1948, between Gallwin, Inc., lessor, and George B. Lee, lessee, for the premises known as 139 West Lake Street, and property in the rear thereof, I am hereby notifying you of Mr. Hackl's intention to exercise the option contained in said lease to extend the term thereof for an additional five (5) years commencing with October 1, 1953, upon the terms and conditions stated in said lease."

Hackl testified that this notice was sent to Ambassador because of his belief that Ambassador was still his landlord and the owner of the building, as he had never been advised as to any sale or transfer thereof.

On March 25, 1953, more than six months prior to the expiration of the lease, Ambassador mailed Hansen a letter in which it stated:

"The people that operate the restaurant, Hackl and Otto, are always complaining that they are paying too much for water. * * *

"This is also to advise you that they are going to continue with the lease at the increased rental, which is $300.00 per month plus water after October 1, 1953."

Hansen testified that he had no recollection of receiving this letter.

Sometime during the latter part of March or the early part of April 1953, Ambassador forwarded Hansen a letter stating:

*"As I have advised you before, the people who operate the restaurant at this location have notified me that they are going to continue with the lease at the increased rental, effective October 1, 1953.*

"I understand you are contemplating selling the building. If you do, please notify the buyer that the rent for the restaurant is only $250.00 plus whatever water they may use, through September 1953. And after that the rent is $300.00 plus water." (Italics supplied.)

Hansen admitted receiving the letter long before he had signed a contract for the sale of the property to plaintiff but testified that he did not recall the exact date of its receipt. On April 17, 1953, he wrote Ambassador in response thereto, explaining the basis for certain water charges required under the lease, but he said nothing about the statement in Ambassador's letters relative to the extension

of the lease or about the fact disclosed therein that notice to such effect had been given by "the people who operate the restaurant," who obviously were distinct from Ambassador.

In July 1953 Hansen sold the premises to plaintiff, Pillsbury Investment Company, and transferred to it his interest as lessor in the described lease. Prior to October 1, 1953, Hackl paid Ambassador $300, representing October 1953 rent at the increased rate. Ambassador forwarded that amount to plaintiff, which declined to accept it and advised Ambassador in writing as follows:

"On September 5, 1953, we advised you that since no lease had been negotiated, we assume you would vacate these premises by midnight on September 30, 1953. You have not done so in spite of the fact that the lease under which the tenants at this address were operating expired September 30, 1953.

"We decline to accept this check as payment for the rent of the month of October, 1953, and consider you unlawfully in possession at this time. Unlawful detainer proceedings are being instituted forthwith."

Based upon the foregoing facts, the trial court determined that there had been no extension of the lease under the option therein and that in consequence any interest which defendants had in the leased premises had terminated.

■ We do not believe that the facts outlined justify the conclusion of the trial court. The record clearly discloses that at no time was Hackl advised either by Ambassador, by Hansen, by plaintiff, or by anyone else that title to the structure of which the leased premises were a part, or lessor's interest in the lease therein, had been transferred by Ambassador. Although Hansen—lessor at the time notice of intent to exercise the option became due—knew there was a restaurant there, he made no inquiry as to the occupant's interest therein and failed to notify anyone that he had purchased the property and, hence, had become lessor thereof. By Hansen's failure in this respect, Hackl was led to believe that Ambassador was still his landlord; that the rental payments due under the lease, as well as the notice of intent to renew it, would therefore have

to be given to Ambassador; and finally that the notice given to Ambassador was in full compliance with the terms of the lease. It is clear that he could have done nothing more to protect his rights under the option.

■ It is well settled that, while notice to an obligor is not essential to the validity of an assignment as between an assignor and an assignee, until such notice has been given, the obligor may continue to regard the assignor as the owner of the interest or thing assigned, whether it be a leasehold; a contract to pay rent; a lien or charge against property; or otherwise (Dworsky v. Unger Furniture Co. 212 Minn. 244, 3 N. W. [2d] 393; Lydiard v. Coffee, 167 Minn. 389, 209 N. W. 263; Cross v. Page & Hill Co. 116 Minn. 123, 133 N. W. 178; Nielsen v. City of Albert Lea, 91 Minn. 388, 98 N. W. 195) ; and that the assignor remains in privity with the obligor insofar as the performance of obligations by the latter is required under the instrument assigned. 2 Dunnell, Dig. (3 ed.) § 561.

The notice of assignment of course determines the time at which the obligor's responsibility for performance of his obligations shifts from the assignor to the assignee (Redden v. Prudential L. Ins. Co. 193 Minn. 228, 258 N. W. 300; Brady v. Chadbourne, 68 Minn. 117, 70 N. W. 981; Schilling v. Mullen, 55 Minn. 122, 56 N. W. 586) ; and with respect thereto, the burden of proving that the obligor has received either actual or constructive notice of the assignment rests upon the assignee. Lydiard v. Coffee, 167 Minn. 389, 209 N. W. 263.

■ These principles have been repeatedly held applicable to the assignment of lessor's interest in a leasehold, or as better expressed to the transfer of the reversion. An option to renew or extend the lease, as a covenant which runs with the land, binds such an assignee by its terms. Leppla v. Mackey, 31 Minn. 75, 16 N. W. 470. He is charged with notice of the interests of persons in possession of the leased premises and, by virtue thereof, with knowledge of the terms and conditions of any lease they may hold, including an option for extension which may be contained therein. Cunningham v. Pattee, 99 Mass. 248; see, 2 Tiffany, Landlord and Tenant, § 231. It follows that, until such an assignee has brought home to the lessee notice

of the assignment of the lease, the obligation of the lessee to perform his covenants thereunder does not extend to the assignee. Dreyfus v. Hirt, 82 Cal. 621, 23 P. 193; Sampson v. Grimes, 7 Blackf. (Ind.) 176; 1 Underhill, Landlord and Tenant, § 321, p. 499.

■ Based upon these principles, it is clear that in the instant case the written notice of intent to exercise the option for extension which was given by Hackl to Ambassador was sufficient to constitute full compliance with all requirements of the lease in respect thereto. It was timely made. It was given to the party known to Hackl as his lessor and to whom rental payments were being made. No notice of the assignment had ever been given to him. His good faith is nowhere challenged. Hansen, as assignee of the lessor, never having notified him of the assignment and never having placed it of record, cannot complain that the notice otherwise due to him was instead given to his assignor.

Plaintiff became owner of the reversion and of the lessor's interest in the lease a substantial time subsequent to the date notice was due and of course can claim no greater right than was possessed by Hansen, its assignor. The situation is not unlike that which existed in Giordano v. Zap, 115 Misc. 619, 620, 189 N. Y. S. 88, 89, where the landlord absented himself from the country during the entire period in which the notice was due and where the court held:

"* * * the respondent's position on this appeal * * * is that under the provisions of the lease * * * the only notice [of intent to exercise option to renew lease] available to the tenants is personal notice. * * * it is clear that the landlord could not have anticipated that under the circumstances the tenants must discover his whereabouts in Italy in order to give him the notice required."

See, also, Gray v. Chamandy & Sons [1929] 63 Ont. L. R. 495, 2 Dom. L. R. 706.

The judgment appealed from is reversed.

Reversed.