## T. L. SNORTLAND v. LARRY OLSONAWSKI.

238 N. W. 2d 215.

January 23, 1976—No. 45490.

*Solberg & Stewart, Garylle B. Stewart, Lamb, Schaefer & McNair, and Michael D. McNair,* for appellant.

*Brink, Sobolik & Severson, Dennis M. Sobolik,* and *Ronald C. Vroom,* for respondent.

Heard before Otis, Scott, and Amdahl, JJ., and considered and decided by the court en banc.

DOUGLAS K. AMDAHL, JUSTICE.*

Appeal from an order of the district court dismissing an action brought by plaintiff-appellant, T. L. Snortland, after he had presented his case and rested in a jury trial. The action was against the lessee of farmland for damages alleged to have arisen from (1) disposition of crops in which Snortland claimed a one-third interest harvested from the land; and (2) the lessee's failure to return the land to the lessor in the same condition as it was when the lease commenced. Affirmed.

Arnold and Earl Getschel were owners of approximtely 320 acres of farmland in Kittson County, Minnesota. The land had been farmed from the fall of 1970 until 1972 by Andrew Olsonawski and since 1972 by his son Larry, defendant-respondent herein, pursuant to an oral year-to-year lease under which the lessor was to receive one-third of the crops in consideration of the lease.

At some time after May 2, 1973, but prior to July 3, 1973, some type of purchase agreement was concluded between the Getschels and appellant Snortland whereby Snortland succeeded to the lessor's rights in the property. At the time of the agreement Snortland knew that the land was being farmed by tenants.

By letter dated May 2, 1973, the Olsonawskis were notified by Arnold Getschel that the land was "in the process of being sold to an investor in Fargo," and "as soon as the papers are final which should be within a month I will give you his name and address." By letter dated July 3, 1973, the Olsonawskis were informed that the land had been sold to Snortland.

In 1971, Andrew Olsonawski contacted Arnold Getschel and

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

inquired as to the disposition of the lessor's share of the crop as there were no storage facilities on the land. He was told to move it to an elevator and handle it in the same way as he handled his own share. In July 1972, Andrew again contacted Arnold and informed him he had contracted with an elevator to sell the 1972 crop, including the Getschel share. Arnold indicated his approval.

On May 25, 1973, Larry Olsonawski sold the 1973 wheat crop to Northcote Farmers Cooperative Association for $2.43 per bushel. In his view it was necessary to make arrangements that early, even though deliveries did not begin until August 16, 1973, because the 1973 harvest was expected to be bountiful and storage space might otherwise be unavailable. The Getschels were not consulted regarding the disposition of the crop in this manner, but Arnold testified that he would have consented if consulted. Snortland was not aware of the sale until he received a check for his one-third share from the association. Snortland had trucks and storage space available for his share of the crop, and the market price of wheat on August 16, 1973, was above that contracted for on May 25, 1973.

The terms of the lease made no mention as to what the condition of the land should be upon termination of the lease. Testimony demonstrated that local custom required a return of the land in the condition it was in at the inception of the lease. Snortland testified that he was advised by Arnold Getschel that the land was entirely black when the Olsonawskis took possession under the the lease. It is apparent that Snortland took this to mean that the land was entirely plowed black, as the complaint on this issue states that the defendant "returned the premises to plaintiff with only a small portion of the Fall plowing done" and the relief requested includes a judgment for "the cost of Fall plowing."

Arnold Getschel was called as a witness by Snortland and testified that he had "one-wayed" all of the premises except about 43 acres and that the northwest 80 and the southwest 80

were plowed at the time the Olsonawskis took possession of the land.[1]

It is undisputed that half of the land, approximately 160 acres, was plowed black when the Olsonawskis relinquished it to Snortland in the fall of 1973.

The sole issue before this court is:

Was plaintiff-appellant's evidence at trial sufficient to create a jury issue?

We agree with the trial court that the question must be answered in the negative.

Where a motion to dismiss is made in a jury case, the same standard is applied as if a motion for directed verdict had been made at the end of plaintiff's case. 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 197. That standard is stated in Hanson v. Homeland Ins. Co. 232 Minn. 403, 404, 45 N. W. 2d 637, 638 (1951):

"It is elementary that a motion for a directed verdict * * * should be granted only in those unequivocal cases where (1) *in the light of the evidence as a whole,* it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the *entire* evidence, or where (2) it would be contrary to the law applicable to the case. * * * In other words, if the evidence *as a whole* so overwhelmingly preponderates in favor of a party as to leave no doubt as to the factual truth, he is entitled to a directed verdict as a matter of law, even though there is some evidence *which, if standing alone,* would justify a verdict to the contrary. Not every conflict in evidence gives birth to a jury question."

The same standard has been applied recently in Nicosia v. Miller, 302 Minn. 533, 224 N. W. 2d 147 (1974); and Stenzel v. Bach,

---

[1] The witness described the difference between one-waying and plowing in this manner: "Plowing is going in with a moldboard plow and turning the furrow. One-waying is going in with a single disk, I would say, and just cutting the top, making it black."

295 Minn. 257, 203 N. W. 2d 819 (1973). It will be applied to the evidence of record regarding the two claims here involved.

As to the first claim, Snortland took the farm subject to the lease and Olsonawski owed no duties to Snortland until notified on July 3, 1973, of the assignment of Getschel's interest. Pillsbury Investment Co. v. Otto, 242 Minn. 432, 65 N. W. 2d 913 (1954). By that date, Olsonawski had already committed the grain to Northcote Farmers Cooperative Association on terms which were acceptable to Getschel and consistent with the lease. Without breaching his contract with Northcote, Olsonawski could not have given Snortland his one-third share in kind even if Snortland had given him such instructions prior to August 16, 1973, when the first delivery was made to Northcote. Nevertheless, Snortland argues that by course of dealing the parties had supplied a term to their lease to the effect that the lessee must consult the lessor before disposing of the crops, and that Olsonawski had no authority to contract with Northcote regarding the one-third share belonging to the lessor. The simple answer to both of these contentions, by admission of Snortland's witness, Arnold Getschel, is that Olsonawski had express authority from Getschel to sell the lessor's one-third share with his own two-thirds share; that this authority existed when the contract was made on May 25, 1973; and that by giving such authority Getschel necessarily waived any right to consultation even assuming such right existed theretofore. Thus, under the applicable law, the evidence preponderates in favor of Olsonawski on this first claim, and the dismissal was proper.

As to the second claim, the custom testified to is not in conflict with the applicable law that the oral lease contained an implied obligation to surrender the farmland to the lessor at the expiration of the lease in as good a condition as when taken. Dehn v. S. Brand Coal & Oil Co. 241 Minn. 237, 63 N. W. 2d 6 (1954). Snortland was entitled to have the land relinquished to him with 160 acres plowed and the balance, less some 43 acres, one-wayed. His claim in this respect, because of a misunderstanding between

himself and Arnold Getschel, was only for plowing and since 160 acres were plowed when he took possession of the land subsequent to the lease, he had received what he had sued for and what he was entitled to receive, and there was no issue for a jury to consider.

Affirmed.