PROGRESSIVE DESIGN, INC., APPELLEE, v. OLSON BROTHERS MANUFACTURING COMPANY, APPELLEE, SECURITY STATE BANK OF OXFORD, INTERVENER-APPELLANT.

263 N. W. 2d 465

Filed March 15, 1978. No. 41313.

Magnuson, Magnuson & Peetz, for appellant.

Duane L. Stromer, for appellee Olson Brothers Manuf. Co.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

This is an action by Security State Bank of Oxford, Nebraska, against Olson Brothers Manufacturing Company to recover money allegedly due under an assignment of the proceeds of a contract between Olson Brothers and Progressive Design, Inc. A jury trial was waived and trial was had to the court. At the conclusion of the bank's evidence the District Court held that the evidence did not show a sufficient notice of the assignment, and dismissed the petition of the bank. The bank has appealed.

On March 31, 1970, Progressive Design, Inc., with

its principal place of business in Douglas County, Nebraska, near Omaha, executed a written contract with Olson Brothers Manufacturing Company, a corporation, whose principal place of business was in Atkinson, Holt County, Nebraska, under which Progressive agreed to manufacture and sell hydraulic valves to Olson Brothers. The contract provided that Progressive might assign the performance of the contract to a subsidiary or related corporation, and that the proceeds of the contract might be assigned as security for working capital loans.

On April 29, 1970, Progressive assigned the performance of the contract and all the proceeds to be received under it to a wholly owned subsidiary of Progressive, Kiddie Karousel, Inc., whose principal place of business was in Oxford, Furnas County, Nebraska. On April 29, 1970, Kiddie Karousel, Inc., as borrower, and Progressive, as guarantor, assigned all claims for money due and to become due under the contract, and all proceeds and accounts receivable arising therefrom, to Security State Bank of Oxford, Nebraska. Kiddie Karousel, Inc., as debtor, and Progressive, as guarantor, also executed a security agreement to the bank on the same date, covering all accounts, contract rights, and general intangibles. Progressive also guaranteed prompt payment of any loans made by the bank to Kiddie Karousel, Inc. On May 14, 1970, Kiddie Karousel, Inc., executed a promissory note to the bank for $17,000, due on demand, for "operating materials inventory."

Howard D. Huff, the president of the bank, testified that on May 14, 1970, he called Olson Brothers and talked to one of the Olson brothers. He could not recall the exact conversation or which brother he talked to, but he testified that he identified himself as president of the bank and stated that the bank had advanced $17,000 for materials for the manufacture of hydraulic valves, and that the bank would ex-

pect payments, when due, to be made to the bank. Mr. Huff testified that after the telephone conversation he wrote and mailed a letter to Olson Brothers conveying the same information he had given them by telephone. He did not make a copy nor send the letter by certified mail, and did not receive any correspondence or communication from Olson Brothers.

The president of Progressive, Mr. Walter Azaroff, testified that shortly after the contract of March 31, 1970, was signed, he discussed the project with Carroll Olson of Olson Brothers, but could not recall whether he specifically told Olson of the assignment of the contract.

Ted Olson testified that neither of the Olson brothers could remember receiving any telephone call or letter from Mr. Huff. He also denied ever discussing the assignment with the president of Progressive, and stated that he was not even aware that Progressive did business with Security State Bank of Oxford, Nebraska.

During the summer of 1970 there were many disagreements between Progressive and Olson Brothers over the quality of the valves being produced, and a great many, if not the majority, of the valves were returned to Progressive for reworking. Apparently no payments were being made.

On August 14, 1970, an attorney for the bank wrote to Olson Brothers stating: "You are herewith notified that default exists in the performance by Progressive Design, Inc., and Kiddie Karousel, Inc., of the terms and conditions of a certain assignment of your contract with them and that said corporations are now in default on the contract.

"As attorney for the Security State Bank, we earlier demanded direct payment on this contract be made to the bank, and we will expect to hold you liable to the extent that any funds have been or will be paid by you to anyone other than the bank."

The letter was sent by certified mail and Ted Olson signed the receipt. Mr. Olson's testimony was that the letter did not identify any contract and meant nothing to him, and that he made no reply. He also testified that he did not have any conversations with the attorney who wrote the letter.

Mr. Huff, the president of the bank, testified that he called Olson Brothers once on August 25, 1970, and once on September 2, 1970, and told one of the Olson brothers that there was money due on the manufacturing contract, and that Olson told him there probably would not be any proceeds because the valves were defective. Ted Olson denied that either he or his brother ever talked to Mr. Huff on the telephone.

On November 27, 1970, Progressive filed an action in the District Court for Holt County, Nebraska, against Olson Brothers to recover damages for breach of the contract. Neither Kiddie Karousel, Inc., nor Security State Bank of Oxford were made parties to the action. The pleadings contained no reference to either of them, nor to any assignment.

On May 29, 1971, Progressive and Olson Brothers entered into a written agreement settling their dispute over the March 31, 1970, contract and their disputes over several other transactions. The agreement settled and released all present and future claims of either party against the other under the contract of March 31, 1970; provided that Olson Brothers would pay $7,000 to Progressive on the date of execution; and provided that Progressive would dismiss the action then pending in the District Court for Holt County. Olson Brothers paid $7,000 to Progressive by check dated May 29, 1971. Thereafter Progressive dismissed the action against Olson Brothers with prejudice.

On June 1, 1971, the Security State Bank of Oxford filed a petition in intervention alleging the execution of the contract of March 31, 1970, and its assignment.

The petition, as amended, alleged that Olson Brothers was notified of the assignment by telephone and by written correspondence. Olson Brothers moved the court to dismiss the petition in intervention. The grounds were that all issues between Progressive and Olson Brothers raised in the pleadings had been settled and the action dismissed with prejudice; that the original issues were moot; and the petition in intervention raised no issues against the defendant. The District Court for Holt County dismissed the petition in intervention and the bank appealed that dismissal to this court. In Progressive Design, Inc. v. Olson Bros. Manuf. Co., 190 Neb. 208, 206 N. W. 2d 832, this court held that the dismissal of plaintiff's cause of action does not affect an intervening petitioner's right to proceed and obtain a determination of his claim to affirmative relief.

Upon remand, jury trial was waived and trial was had to the court. The evidence outlined above was presented by the intervener Security State Bank of Oxford. At the conclusion of the bank's evidence the District Court held "that the intervenor has failed to make showing of a sufficient notice of the assignment, and the petition in intervention be and is dismissed." The bank has appealed.

The bank contends that adequate notification of the assignment was given, and that the notification reasonably identified the rights assigned, but that even if the notification did not reasonably identify the rights assigned it was, nevertheless, sufficient to put a reasonable man on inquiry, and Olson Brothers should be held to have received actual notification.

The District Court, as fact finder, concluded that the letter of August 14, 1970, was the only notification received by Olson Brothers. That letter referred only to performance by Progressive and Kiddie Karousel, Inc., of the terms of "your contract with them."

At the time Olson Brothers had several contracts with Progressive in addition to the one of March 31, 1970. Some were oral, some were on purchase orders, and some were letter agreements of various dates. These transactions involved machinery components, pipe welding equipment, metal dies, flanges for irrigation pipe components, furnishing of professional services in the design and production of equipment, and fabrication of sundry parts or other devices. Olson Brothers had no contracts or transactions with Kiddie Karousel, Inc. There is no evidence that Olson Brothers knew that Kiddie Karousel, Inc., was a subsidiary of Progressive. Ted Olson did not know that Progressive did business with Security State Bank of Oxford, Nebraska. The letter of August 14, 1970, did not identify the contract by date, or by the type or kind of contract, nor did it refer to the product or services contracted for, nor even the amount of money involved. It did not indicate whether performance or only payment had been assigned.

The District Court not only determined that the letter of August 14, 1970, did not reasonably identify the rights assigned, but specifically found that the letter was not sufficient to put Olson Brothers on inquiry about the assignment. The District Court also made a factual finding that no actual notice was given to Olson Brothers at any time before the petition in intervention was filed. At that time all amounts due under the contract of March 31, 1970, had been paid, and all rights and claims under it settled and released.

Section 9-318, U. C. C., is applicable. Subsection (1) of that section, with exceptions inapplicable here, provides that the rights of an assignee are subject to all the terms of the contract between the account-debtor and assignor and any defense or claim arising therefrom; and any other defense or claim of the account-debtor against the assignor which ac-

crues before the account-debtor received notification of the assignment.

Subsection (3) of section 9-318, U. C. C., provides: "The account debtor is authorized to pay the assignor until the account debtor receives notification that the account has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."

Comment 5 to section 9-318, U. C. C., states in part: "Subsection (3) requires reasonable identification of the account or contract right assigned and recognizes the right of an account debtor to require reasonable proof of the making of the assignment and to that extent validates such requirements in contracts or purchase order forms. If the notification does not contain such reasonable identification or if such reasonable proof is not furnished on request the account debtor may disregard the assignment and make payment to the assignor."

The assignee of an account receivable has the burden of proving that the account-debtor received notification of the assignment and that the notification reasonably identified the rights assigned. See, § 9-318, U. C. C.; Bank of Salt Lake v. Church of Latter Day Saints, 534 P. 2d 887; People's Finance & Thrift Co. v. Landes, 28 Utah 2d 392, 503 P. 2d 444; Pillsbury Inv. Co. v. Otto, 242 Minn. 432, 65 N. W. 2d 913.

The District Court, as the fact finder here, specifically held that the intervener "failed to make showing of a sufficient notice of assignment." There is evidence in the record to support that determination. Unless this court can say, as a matter of law, that the determination of the trial court was clearly

wrong, that action must be affirmed.

AFFIRMED.