**SECURITY STATE BANK OF AITKIN, Respondent,**

**v.**

**Carl A. MORLOCK, Defendant,**

**Home Mutual Insurance Company, Appellant.**

**No. C8–84–398.**

Court of Appeals of Minnesota.

Sept. 18, 1984.

Jeffrey J. Haberkorn, Hudson & Haberkorn, Aitkin, for respondent.

Carl A. Morlock, Onamia, pro se.

Michael J. Ford, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for appellant.

Heard, considered and decided by PARKER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

PARKER, Judge.

Carl Morlock assigned his uninsured motorist claim to the Security State Bank of Aitkin as security for a loan. After the draft was delivered to the bank, Morlock's mother called the insurance company and ordered payment stopped on the check. The insurance company stopped payment on the draft and issued a second draft, which Morlock cashed. The trial court concluded that the insurance company was put on constructive notice of the assignment and, in the face of that notice, failed to honor the assignment. Judgment was entered against respondent. We affirm.

## ISSUES

1. Is there sufficient evidence to support the trial court's finding that Morlock (the assignor) retained no control over the fund?

2. Is there sufficient evidence to support the trial court's finding that Morlock

retained no power of revocation over the fund?

3. Is there sufficient evidence to support the trial court's finding that Home Mutual had constructive notice of Morlock's assignment of his insurance claim to the bank?

## FACTS

John Zettervall of Central Claims Services, Inc., adjusted and settled an uninsured motorist's claim as agent of defendant Home Mutual Insurance Company with Carl A. Morlock for the sum of $4,300 on April 30, 1982.

At the time of the settlement, releases were obtained from Carl Morlock, although no check, draft or other payment was made to him. On that same day, Zettervall did draft and deliver to Morlock a memo addressed "to whom this may concern," stating that such a settlement had been made and "the $4,300 draft will be issued by Home Mutual Insurance Company of Minneapolis during the first week in May 1982. Mr. Carl Morlock should receive this draft on or about May 5, 1982." Zettervall testified that he knew at the time this memo was delivered to Morlock that Morlock was going to show the memo to his "banker."

After the settlement was made, Morlock stopped by the local bank to try to get a loan for a car. Morlock met with Richard Ladd, a bank officer at the Security State Bank of Aitkin. Morlock and Ladd discussed the bank taking an assignment of Morlock's insurance claim as collateral for such loan.

Ladd called Zettervall and asked him to inform Home Mutual about the assignment and to send the settlement check directly to the bank's facility in Garrison, Minnesota. Zettervall agreed to do so and sent a letter to Home Mutual informing them of his conversation with Ladd. He also told Home Mutual that Security Bank had made a loan to Morlock and requested that the check be sent to Security Bank in Garrison.

Zettervall admitted on cross-examination that he felt transmittal of the check to Security was consistent with Morlock's "desire."

Later on April 30, 1982, Security loaned to Morlock $2,501 at 16 percent interest as an advance on Morlock's insurance claim against Home Mutual. Morlock executed a combination note and security agreement which provided that to secure payment of the indebtedness evidenced by the note, Morlock granted to Security a security interest under the Uniform Commercial Code. The note also provided that Morlock was assigning to Security his insurance claim against Home Mutual. Morlock admitted the assignment through his failure to answer respondent's request for admissions on that point.

On May 3, 1982, Ladd called Home Mutual and spoke with a female employee in the claims department and relayed the request to have the check payable to Morlock mailed to the bank. On May 6 Ladd called Home Mutual again and confirmed that the check, payable to Morlock, had been sent to Security. On May 12 another phone call was made by Ladd to Home Mutual. On that same day Security received the check in the amount of $4,300 drawn by Home Mutual and payable to Morlock.

Morlock's mother called Home Mutual on May 12, 1982, and spoke with Lyle Solie, claims supervisor. She requested stop payment on the check previously mailed to and received by Security. On May 13, 1982, Home Mutual stopped payment on the original check issued to Morlock and mailed to and received by Security.

Morlock picked up the second check directly from Home Mutual and cashed it. Morlock did not pay any part of that check or any other sums to Security on the note and security agreement executed April 30, 1982.

Security learned of the stop payment and reissuance of the check on July 30, 1982. A court trial was held on November 17, 1983. The trial court concluded that:

(a) there exists a valid note and security agreement between Security and Morlock;

(b) Morlock is in default on the note and that Security is entitled to judgment against Morlock in the sum of $4,378.16, together with costs and disbursements;

(c) Home Mutual had constructive notice of the assignment of Morlock's claim;

(d) with notice of the assignment Home Mutual violated the assignment by stopping payment on the first draft issued in favor of Morlock, issuing a second draft without inquiry to Security and delivering the draft to Morlock;

(e) Morlock had no control over the subject of the assignment, the $4,300 claim, in that he had no possession of it and had assigned all his interest to Security and only obtained dominion over said monies by an illegal act; and

(f) Security was entitled to judgment against Home Mutual in the sum of $4,300 plus their costs and disbursements.

## DISCUSSION

■ Under Minnesota law, although no " 'particular form of words is required' for an assignment, 'an intent to transfer must be manifested and the assignor must not retain any control over the fund or any power of revocation.' " *Guaranty State Bank of St. Paul v. Lindquist*, 304 N.W.2d 278, 281 (Minn.1980). The trial court concluded that, taking the record as a whole, Home Mutual had constructive notice of the assignment, Morlock had no control over the fund, and Morlock retained no power of revocation over the claim. A reviewing court will not set aside factual findings made by the trial court absent a determination that the findings are clearly erroneous. *Frank v. Illinois Farmers Ins. Co.*, 336 N.W.2d 307, 311 (Minn.1983).

### I

Appellant contends that Morlock retained control over the insurance settlement by having the "draft issued in his name." Appellant cites no authority for this proposi-tion. The trial court found that Morlock retained no control over the funds.

■ Delivery of possession of the settlement draft to the bank established ownership and title of that draft under Minn.Stat. § 336.3–201(3). That provision of the Uniform Commercial Code provides:

Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified endorsement of the transferor. Negotiation takes effect only when the endorsement is made and until that time there is no presumption that the transferee is the owner.

Thus, the transferee must account for his possession of the note by proving the transaction by which he acquired it. MSA § 336.3–201(3) *Comment* 8.

■ Appellant further argues that Morlock retained control by being the sole payee, with the right to request cancellation of the draft. Minnesota law is contrary to this proposition. A payee has no right to stop payment. Minn.Stat. § 336.4–403 says, in relevant part:

(1) A customer may by order to his bank stop payment of any item payable for his account but the order must be received at such time and in such manner as to afford the bank a reasonable opportunity to act on it prior to any action by the bank with respect to the item described in section 336.4–303.

UCC Comment 3 to this statute states: Subsection (1) *follows the decisions holding that a payee or endorsee has no right to stop payment.* This is consistent with the provision governing payment or satisfaction. See Section 3–603. The sole exception to this Rule is found in Section 4–405 on payment after notice of death, by which any person claiming an interest in the account can stop payment.

(Emphasis added). The fact that Morlock's mother requested cancellation of the draft further illustrates the invalidity of appellant's argument.

Finally, appellant cannot deny that Morlock assigned his insurance claim to respondent because Morlock admitted the assignment through his failure to deny respondent's request for admissions, *see* Minn.R. Civ.P. 36.01, and he did not testify. Pursuant to Rule 36.02 of the Minnesota Rules of Civil Procedure, the assignment is conclusively established. A Rule 36 admission is comparable to an admission in pleadings, rather than to an evidentiary admission of a party. Louisell, § 838 (Wright ed. 1961). Thus, the obligor was in no position to question the validity of the assignment. *Cornish, Curtis & Greene Co. v. Marty*, 76 Minn. 493, 79 N.W. 507 (1899).

## II

Although appellant states that the court erred in finding that Morlock retained no power of revocation, it does not set forth any specific arguments to support its position. There was sufficient evidence from which the trial court could conclude that Morlock had no power of revocation over this fund. Had Home Mutual been in doubt as to whom to send the draft, it could, of course, have deposited it with the Clerk of Court as a "stakeholder" and avoided prejudice to either claimant.

## III

The trial court concluded that, based on the evidence before it, a reasonable man would have been put on inquiry as to the relationship of Morlock to the bank and the draft and that the evidence, taken as a whole, constituted notice of the assignment to defendant Home Mutual.

■ Appellant argues that the trial court's findings of fact are inconsistent with its conclusions of law regarding the assignment issue. Our efforts to harmonize the court's findings and conclusions have led us to conclude that the trial court meant to distinguish between actual and constructive notice. Although appellant may not have had actual notice of the assignment, we believe that it had constructive notice.

■ An obligor is liable to an assignee for the debt assigned if it pays that debt to the obligee-assignor after either actual or constructive notice of the assignment. *Jefferson County Bank v. Erickson*, 188 Minn. 354, 247 N.W. 245 (1933). The Minnesota Supreme Court has said the following regarding constructive notice:

> The evidence of notice may be circumstantial, for it is familiar law that a man may not shut his eyes and close his ears and say he had no notice when the circumstances are such as to put a reasonably prudent man upon inquiry which, if made, would have disclosed the fact of the assignment. In such circumstances there is constructive notice, which has the same effect as actual notice.

*Lydiard v. Coffee*, 167 Minn. 389, 393, 209 N.W. 263, 264 (1926).

The evidence at trial showed that Zettervall, an agent for Home Mutual, at the time of settlement of the claim, had a discussion with Morlock about Morlock's intended purchase of a car with loan proceeds. It was after this conversation that Morlock requested that Zettervall write a memorandum setting forth the terms of the insurance claim settlement. This Zettervall did, fully aware that it was going to be shown to a banker. Shortly thereafter, Zettervall received a call from Morlock's loan officer, Richard Ladd, in which he was informed of a car loan and a request by Ladd that the insurance settlement check be sent to the bank's detached facility in Garrison, Minnesota. Zettervall wrote a memo to Home Mutual stating, "I think the insured has taken a loan out with the Security Bank of Garrison and the bank asked that the draft be forwarded to Security Bank, Garrison, Minnesota 56450."

■ Home Mutual admits receiving Zettervall's memo and marking its file that the check was to be sent to the bank at its facility in Garrison, Minnesota. It admits that it received several calls from Ladd inquiring about the status of the check, the last such conversation occurring just the day before Home Mutual received a phone call from Morlock's mother requesting stop

payment and reissuance. In light of all this, Home Mutual made no inquiry whatsoever of the plaintiff as to its claim or status in the matter but instead stopped payment on the check and reissued a new check to Morlock.

We agree with the trial court that a reasonable man would have been put on inquiry which, if made, would have disclosed the assignment between Morlock and respondent. Therefore, constructive notice existed. Accordingly, the stop payment and disbursement of funds to Morlock defeated the assignment, rendering appellant liable to respondent for the insurance proceeds assigned.

## DECISION

Sufficient evidence exists to support the trial court's finding that Morlock had assigned all of his interest in the insurance proceeds to respondent and thus retained no control or power of revocation over the funds. The established facts constituted constructive notice to appellant of Morlock's assignment to respondent. Appellant is liable to respondent for the insurance proceeds assigned.

Affirmed.