**COMSTOCK & DAVIS, INC., Appellant,**

v.

**G.D.S. & ASSOCIATES,
et al., Defendants,**

**First Trust National Association, f/k/a
Minnesota Trust Company, Inc.,
Respondent,**

**Arrow Building Center, a division of
Consolidated Lumber Company,
et al., Appellants.**

No. C2–91–1310.

Court of Appeals of Minnesota.

Feb. 11, 1992.

William D. Hull, Timothy R. Duncan, Coleman, Hull & Van Vliet, Minneapolis, for Comstock & Davis, Inc. and Arrow Bldg. Center.

Gary A. Van Cleve, Larkin, Hoffman, Daly & Lindgren, Bloomington, for First Trust Nat. Ass'n.

Considered and decided by FORSBERG, P.J., and CRIPPEN and DAVIES, JJ.

## OPINION

FORSBERG, Judge.

Appellant Comstock & Davis, Inc. (C & D) commenced a mechanics' lien foreclosure for surveying services on the Brick Pond Apartments (Brick Pond) in Stillwa-

ter, Minnesota. C & D claimed its liens were prior and superior to all other lienholders, except coordinate mechanics' lienholders. Respondent First Trust National Association (First Trust) claimed priority of its mortgage over any mechanics' lien. The district court granted C & D summary judgment as against G.D.S. & Associates (G.D.S.), the general partnership owning Brick Pond, and ordered trial exclusively on the issue of priority of liens.

The court found the mortgage of First Trust was prior and superior to the mechanics' lienholders under Minn.Stat. § 514.05 (1986). The parties, by stipulation, determined amounts due under the liens, and final judgment was entered. C & D and other similarly situated mechanics' lienholders appeal as to the priority issue.

## FACTS

In 1986, G.D.S. undertook construction of Brick Pond, a 40–unit apartment complex. In October 1986, Ron Murphy, vice-president of C & D, was contacted by Howard Turrentine, G.D.S.'s general counsel, and asked to perform a boundary survey. Turrentine claimed he told Murphy the survey was necessary to assure financing through municipal bonds. Murphy recalls no such conversation.

Once the boundary survey was completed, Murphy was again contacted, this time by Del Freeman, an employee of Swagar Brothers Realty, and was asked to do field surveying work on the building site. Freeman apparently told Murphy the work was to be done for Krongard Construction.

C & D's original invoice was sent to G.D.S., and the invoice for the field surveying work was forwarded to Krongard Construction. Krongard Construction then informed Murphy that G.D.S. was responsible for the surveying bills.

On November 25, 1986, a mortgage in favor of First Trust was executed by G.D.S. to finance the construction of Brick Pond. The first visible and actual improvements on the property in the form of survey staking occurred on December 3, 1986.

The mortgage was recorded on December 18, 1986.

Brick Pond was eventually constructed, but G.D.S. defaulted and the mortgage was foreclosed by First Trust. G.D.S. failed to redeem. C & D and a number of other mechanics' lienholders brought this action, claiming priority over First Trust. A trial was held strictly on the issue of priority, specifically on the issue of whether C &·D had actual notice of First Trust's unrecorded mortgage under Minn.Stat. § 514.05 (1986).

The court found there was sufficient circumstantial evidence to find C & D had constructive knowledge of the mortgage. Although the court found this notice sufficient in and of itself, it went on to determine C & D was a subcontractor of the general contractor, Krongard Construction. The court reasoned this provided an independent ground for a finding of actual notice because Gary D. Swagar owned 20% of Krongard Construction, and because the Swagars were principals of the developer, mortgagor G.D.S.

After several appeals, the priority and amount of the various liens was established and judgment was entered. This appeal is limited to the issue of priority.

### ISSUES

1. Did the trial court err in determining C & D had actual notice sufficient to satisfy Minn.Stat. § 514.05?

2. Did the trial court err in finding C & D was a subcontractor of Krongard Construction, and as such had imputed notice sufficient to satisfy Minn.Stat. § 514.05?

### ANALYSIS

■ C & D failed to make a motion for a new trial or amended findings. The standard of review on appeal from judgment only is whether the evidence is sufficient to support the trial court's findings, and whether the findings support the trial court's conclusions of law. *Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

1. In arriving at its decision, the trial court noted the stipulations as to facts, and determined the sole issue was whether the mechanics' lienholders had actual notice of the preexisting mortgage. This was a statutory determination based on the provision that:

All such liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had *actual notice* thereof.

Minn.Stat. § 514.05 (1986) (emphasis added).

■ The trial court in this case determined that based strictly on circumstantial evidence, C & D received actual notice. Specifically, the court concluded Murphy's generalized knowledge derived from 35 years of experience as a surveyor must have imputed knowledge of some financing arrangement, since such arrangements are commonplace in projects of this size.

However, generalized knowledge of non-specific financing to be arranged at some point in the future is insufficient to satisfy the actual notice standard. The standard demands something much more specific:

We acknowledge that a mortgage commitment is part of a continuous transaction culminating in the execution and recording of the mortgage instrument. Nevertheless, the "actual notice" exception contained in the first sentence of section 514.05 requires notice of an existing encumbrance on the land and not merely of negotiations leading up to it.

*Jadwin v. Kasal*, 318 N.W.2d 844, 849 (Minn.1982) (footnote omitted).

First Trust insists *Jadwin* is distinguishable because in that case, the mortgage was not executed until after the first visible improvements. Here, the mortgage was executed, though not recorded, before the first visible improvements. However, *Jadwin* very specifically states:

As a general rule, a mechanics lien, which attaches at the time the first item

of material or labor is furnished upon the premises, has priority over a construction mortgage that is *not recorded* until after the lien has attached. Minn.Stat. § 514.05 (1980).

*Id.* at 848–49 (emphasis added). Because the recording date is the operative touchstone, the proffered distinction is immaterial.

First Trust further argues actual notice may be equated to constructive notice, which it insists is present here. We find unpersuasive First Trust's authority which states:

> The evidence of notice may be circumstantial, for it is familiar law that a man may not shut his eyes and close his ears and say he had no notice when the circumstances are such as to put a reasonably prudent man upon inquiry which, if made, would have disclosed the fact of the assignment. In such circumstances there is constructive notice, which has the same effect as actual notice.

*Lydiard v. Coffee,* 167 Minn. 389, 393, 209 N.W. 263, 264 (1926).

More recent authority indicates *Lydiard* improperly blurred distinctions between three separate species of notice for purposes of Minn.Stat. § 514.05. "Constructive notice," as referred to in *Lydiard,* is inapplicable here since it applies only to *recorded* documents and is specifically distinguishable from the required actual notice.

> Constructive notice is a creature of statute and, as a matter of law, imputes notice to all purchasers of any properly recorded instrument even though the purchaser has no actual notice of the record.

*Anderson v. Graham Inv. Co.,* 263 N.W.2d 382, 384 (Minn.1978). Since the purported notice here necessarily came before recording, constructive notice is definitionally impossible.

■ In referring to constructive notice, First Trust may in fact be more properly referring to implied or inquiry notice. Implied notice occurs where one has *"actual knowledge* of facts which would put one on further inquiry." *Id.* (emphasis in origi-

nal). Inquiry notice is thus distinguished from actual notice, which requires conveying knowledge of a signed, enforceable agreement. *See Levine v. Bradley Real Estate Trust,* 457 N.W.2d 237, 240 (Minn. App.1990) (no actual notice of easement based merely upon telephone conversation that gives notice a document concerning parking privileges *might* be signed), *pet. for rev. denied* (Minn. Aug. 7, 1990). Thus, by limiting its terms to "actual notice," Minn.Stat. § 514.05 excludes enforcement of mortgages where only inquiry notice is provided. *Cf., Miller v. Hennen,* 438 N.W.2d 366, 369 (Minn.1989) ("A purchaser in good faith is one who gives valuable consideration without *actual, implied or constructive notice* of inconsistent outstanding rights of others.") (emphasis added).

The record contains no evidence showing actual knowledge by C & D of a signed enforceable mortgage agreement before the field staking on December 3, 1986. The terms of Minn.Stat. § 514.05 are clear and unambiguous. In the absence of actual notice, C & D and the other mechanics' lienholders must be given priority over First Trust.

■ 2. The trial court alternatively ruled because C & D was a subcontractor of Krongard Construction, it had actual knowledge of the prior mortgage by virtue of the 20% interest of Gary Swagar in Krongard Construction. However, Minnesota law has long held rights under the mechanics' lien statute are not derivative or substitutionary of the general contractor's rights. *Gardner v. Leck,* 52 Minn. 522, 526, 54 N.W. 746, 748 (1893). Where actual notice is required, the supreme court has resisted allowing imputed or substitutionary notice to suffice.

> [Actual notice] is not to be conclusively presumed or legally imputed to [a party] merely because of the mental condition or the knowledge of another person, however related to him.

*Benton v. Minneapolis Tailoring & Mfg. Co.,* 73 Minn. 498, 506, 76 N.W. 265, 267 (1898) (quoting *Reisan v. Mott,* 42 Minn. 49, 51, 43 N.W. 691, 692 (1889)).

Additionally, the trial court in this case erred in finding C & D was a subcontractor of the general contractor, Krongard Construction. Krongard Construction very clearly stated that it did not consider C & D to be a subcontractor. A subcontractor relationship arises only in relation to a preexisting contractual relationship with a third party. A subcontractor is defined as:

One who takes portion of a contract from principal contractor or another subcontractor. One who has entered into a contract, * * * for the performance of an act with the person who has already contracted for its performance.

*Black's Law Dictionary* 1277 (5th ed. 1979).

The third-party contractual relationship is missing in this case. C & D's initial contact on this job was through Turrentine, acting as agent for G.D.S. The second contact, specifically requesting the staking, was made by Freeman, an employee of Swagar Brothers Realty, not Krongard Construction. Freeman instructed C & D to do the field work as required by Krongard Construction, thus resulting in a work order made out to Krongard Construction. However, upon first request for payment on the work order, Krongard Construction clearly instructed C & D to contact Turrentine for payment since G.D.S. agreed to handle the surveying end of the project.

In addition, the essential elements of a contract between C & D and Krongard Construction are missing. Specifically, there was no "meeting of the minds" as to an offer and acceptance. Each party testified that no contract relationship was formed. Certainly, it seems an offer was missing in that no agent of Krongard Construction ever requested any services from C & D. Both times services were performed by C & D, they were requested by agents of G.D.S. and Swagar Brothers Realty. Further, the testimony of Turrentine, an agent of G.D.S., establishes consideration was duly owed to C & D by G.D.S.

## DECISION

The record in this case is devoid of any facts sufficient to find actual notice of any mortgage or encumbrance on the property so as to defeat the mechanics' lienholders' priority over an executed but unfiled mortgage. The trial court abused its discretion by granting the mortgagee priority. The judgment as to the issue of priority is reversed.

Reversed.