RESOLUTION TRUST CORPORATION, as Receiver for Midwest Savings Association, a federal association, Plaintiff,

v.

FORD MALL ASSOCIATES LIMITED PARTNERSHIP, et al., Defendants,

and

Weis Builders, Inc., Intervener.

WEIS BUILDERS, INC., Plaintiff,

v.

FORD MALL ASSOCIATES LIMITED PARTNERSHIP, et al., Defendants.

SPANCRETE MIDWEST COMPANY, Intervener,

and

Resolution Trust Corporation, as Receiver for Midwest Savings Association, a federal association, Defendant and Third–Party Plaintiff,

v.

LAWYERS TITLE INSURANCE CORPORATION, and Metro Title Corporation, Third–Party Defendants.

Civ. No. 4–89–971.

United States District Court, D. Minnesota, Fourth Division.

Nunc Pro Tunc April 12, 1993.

See also 819 F.Supp. 826.

Elmer Bernard Trousdale, Oppenheimer Wolff & Donnelly, St. Paul, MN, Mary Elizabeth Senkus, Linda J. Soranno, Oppenheimer Wolff & Donnelly, Minneapolis, MN, Ferdinand F. Peters, FDIC Legal Div., Burnsville, MN, for plaintiff Resolution Trust Corp.

Alfred H. Edwall, Jr., Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for defendant Ford Mall Associates Ltd. Partnership, and Joseph Weis.

Milton Cohen, pro se.

Joseph F. Grabowski, Grabowski Law Office, Plymouth, MN, for Specialty Sales Service, Inc.

Peter C. Halls, Faegre & Benson, Minneapolis, MN, for Julius B. Nelson & Son, Inc.

Philip T. Colton, Maun & Simon, Minneapolis, MN, for St. Paul Linoleum & Carpet Co., Inc.

Michael D. Quayle, Green Merrigan Johnson & Quayle, Minneapolis, MN, for Minnesota Mechanical, Inc.

Thomas J. Williams, Miller & Williams, Minneapolis, MN, for Seal–Treat Inc.

Alan Kenneth Ruvelson, Jr., Ruvelson Kautzer & Schmidt, St. Paul, MN, for Wheeler Hardware Co.

William Dennis Hull, Coleman Hull & Van Vliet, Minneapolis, MN, for Jesco Inc.

J.P. Albert Co. Inc., pro se.

John M. Koneck, Ronda P. Bayer, Fredrikson & Byron, Minneapolis, MN, for Nichols & Hines Inc.

David Joseph Meyers, Rinke & Noonan, St. Cloud, MN, for Ron's Cabinets Inc.

Michael John Minenko, Michael D. Madigan, Johnson & Madigan, Minneapolis, MN, for Gateway Glass Co.

James Eric Lindell, Minneapolis, MN, for Pope Associates Inc.

James Kenneth Sander, Wagner Johnston & Falconer, Minneapolis, MN, for Yale Inc.

John Gilbert Gisselquist, Gisselquist Law Office, St. Paul, MN, for Steward Lumber Co.

Harold Julian Slawik, III, Slawik Law Offices, St. Paul, MN, for Grazzini Bros. & Co.

John Gerard Patterson, Timothy Charles Cook, Moore, Costello & Hart, St. Paul, MN, for Industrial Sprinkler.

Peter W. Johnson, Johnson & Wood, Wayzata, MN, for Curran V. Nielsen Co., Inc.

Andrew J. Eisenzimmer, John C. Gunderson, Meier, Kennedy & Quinn, St. Paul, MN, for Minnesota Fence & Iron Works, Inc.

Todd Stedtfeld, Stedtfeld Law Office, River Falls, WI, Bruce Lennart Beck, Galena & Beck, St. Paul, MN, for Weber Elec. Inc.

Jeffrey Allen Hanson, Paul William Bucher, Ken Douglas Schueler, Dunlap, Finseth, Berndt & Sandberg, Rochester, MN, for Weis Builders Inc.

Allen E. Christy, Jr., Hadlick Hoedeman & Christy, Minneapolis, MN, for Wilfred S. Gall.

Jack D. Elmquist, Thomas Suprenant, Elmquist Law Office, Minneapolis, MN, for Minuti–Ogle Co. Inc.

James Todd Swenson, MacKall, Crounse & Moore, Minneapolis, MN, for Spancrete Midwest Co.

Robert P. Laue, Snelling Christensen & Briant, Minneapolis, MN, for Western Steel Erection, Inc.

Jeffrey L. Knutson, Glenn Rehbein Excavating, Inc., Lino Lakes, MN, for Glenn Rehbein Excavating, Inc.

Gary Alan Heck, Faegre & Benson, Minneapolis, MN, for Norwest Bank Minneapolis.

Joseph Michael Paiement, Paul D. Dove, Arnold & McDowell, Minneapolis, MN, for Roseville Bank.

Paul Laurin Ratelle, Priscilla McNulty, Fabyanske, Svoboda, Westra, Davis & Hart, Gerald G. Workinger, Jr., Workinger Law Office, Minneapolis, MN, for Lawyers Title Ins. Corp.

Chad D. Lemmons, for Metro Title Corp.

James Kenneth Sander, Wagner Johnston & Falconer, Minneapolis, MN, for Mechanic's Lien Coordinator.

**AMENDED ORDER**

DOTY, District Judge.

The above matter came on for trial before the court on February 3, 1993, on the com-plaint of plaintiff Resolution Trust Corporation ("RTC") for the entry of judgment against defendants Ford Mall Associates Limited Partnership ("FMALP"), Milton Cohen ("Cohen"), Roseville Bank, n/k/a FirStar Roseville ("FirStar"), and Pope Associates, Inc. ("Pope Associates"). Elmer B. Trousdale, Ferdinand F. Peters, and Linda J. Soranno, all of Oppenheimer Wolff & Donnelly, 3400 Plaza VII Building, 45 South Seventh Street, Minneapolis, Minnesota 55402, appeared on behalf of plaintiff RTC as receiver for Midwest Savings Association, F.A. There was no appearance on behalf of defendants Ford Mall and Cohen. Joseph Paiment, Esq. appeared on behalf of FirStar, and James Lindell, of the Lowe, Schmidthuber & Lindell Law Firm, 2420 Centre Village, 431 South Seventh Street, Minneapolis, MN 55415, appeared on behalf of Pope.

Based on the testimony and other evidence admitted at trial, prior orders of the court, memoranda submitted regarding the case, and the file and proceedings herein, the court makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. This action involves various disputes arising out of the renovation and new construction of the Ford Mall project. Ford Mall Associates Limited Partnership was a partnership between general partners, Cohen, a St. Paul businessman, and Joseph Weis ("Weis"), owner and operator of Weis Builders, Inc., a general contractor. FMALP was formed to develop the Ford Mall complex in Highland Park, a neighborhood in St. Paul, Minnesota.

**FORECLOSURE OF MWF'S MORTGAGE**

2. Beginning in the fall of 1986, FMALP, acting through Weis and Cohen, sought financing from MWF Mortgage Corporation ("MWF") to remodel an existing Ford Mall building and to construct a new retail shopping mall, office building, and parking ramp at the Ford Mall complex. MWF was a wholly owned subsidiary of Midwest Federal Savings & Loan Association ("Midwest Federal"). On December 4, 1986, Weis and Cohen obtained a commitment from MWF for a construction loan in the amount of $8,625,000.

3. By appointment order dated December 7, 1990, RTC was appointed as receiver for Midwest Savings Association, F.A. On August 1, 1989, pursuant to an assignment of mortgage and security agreement and fixture financing statement, MWF Mortgage Corporation ("MWF") assigned to Midwest Savings Association, F.A. its interest in the mortgage and security agreement and fixture financing statement ("MWF's mortgage").

4. On December 29, 1986, Weis and Cohen, on behalf of FMALP, executed in favor of MWF a construction loan agreement ("construction loan agreement"), a promissory note in the original principal amount of $8,625,000 ("note"), a mortgage and security interest and fixture financing statement ("mortgage") and an assignment of rents and leases ("assignment"). The promissory note, mortgage and assignment shall collectively be referred to as the "loan documents." Weis and Cohen also executed personal guarantees which provided that they absolutely and unconditionally agreed to be jointly and severally liable for the obligations of FMALP under the terms of the note. The mortgage, which has been recorded, is described as follows:

Ford Mall Associates Limited Partnership, Mortgagor, MWF Mortgage Corporation, mortgagee, dated December 29, 1986, filed on July 6, 1987, as Document Number 2390670 in the office of the County Recorder in and for Ramsey County, Minnesota, and filed on July 22, 1987, as Document Number 843628 in the office of the Registrar of Titles in and for Ramsey County, Minnesota.

The mortgage encumbers the real estate legally described as follows:

Lots 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, Block 8, St. Catherine Park, according to the recorded plat thereof, Ramsey County, Minnesota.

5. On January 29, 1989, the loan to FMALP was declared in default. As of February 1, 1993, the amount outstanding on FMALP's indebtedness totals: 1) principal in the amount of $7,067,818.39; 2) interest and late charges in the amount of $3,022,638.99; and 3) attorneys' fees and costs in the amount of $185,641.40. Specifically, the events of default are as follows:

a. FMALP failed to pay interest due under the terms of the note and mortgage on the first day of October, 1988 and on the first day of each month thereafter.

b. FMALP failed to pay late charges due pursuant to the terms and conditions of the note on October 15, 1988, and on the 15th day of each month thereafter for payments delinquent beyond that date.

c. The completion date, as that term is defined in the construction loan agreement, did not occur on or prior to April 1, 1988, in that FMALP failed by that date to satisfactorily complete the construction of improvements on the premises contemplated in the construction loan agreement and, pursuant to the terms of the note, and as a result of such failure, MWF was, as of April 1, 1988, entitled to declare the entire unpaid principal balance under the note immediately due and payable.

d. The loan is out of balance, as that term is defined in Article VII, Section 3 of the construction loan agreement.

e. FMALP failed to pay real estate taxes and assessments due and owing against the premises in 1988 and all subsequent years.

### JUDGMENT AGAINST MILTON COHEN

6. On December 29, 1986, Cohen executed a personal guaranty in favor of MWF covering the amount of the indebtedness specified above. Cohen has failed to pay any amount of the indebtedness, therefore, he is in default on the guaranty.

### POPE ASSOCIATES' LIEN CLAIM

7. Pope Associates has asserted that its lien amounting to $28,873.61 is prior to MWF's mortgage lien on the property, making three arguments in support of that claim: (1) the first visible improvement on the Ford Mall property, in the form of demolition and surveys, took place prior to execution of the mortgage on December 29, 1986; (2) Pope Associates had no actual knowledge of the mortgage; and (3) even if the first visible improvement did not occur prior to December 29, 1986, Pope's lien accrued before MWF's mortgage was recorded.

## A. Demolition

8. On September 28, 1984, the City of St. Paul issued a permit to Harvey Investments permitting certain demolition at the Ford Mall site ("1984 permit"). Cohen and the city inspector, Lee Williamson, testified that on March 18, 1985 and September 26, 1985, Kraus–Anderson removed a total of two percent (2%) of the ceiling tiles from the lower level of the existing building on the Ford Mall site. Each demolition occurred a few days before the 1984 permit was to become void.[1] Certain fixtures, including bowling alley lanes, had already been removed for salvage. Cohen testified that he had the tiles removed in order to retain the 1984 permit, which would otherwise have expired. To remain valid, the 1984 permit required that work be performed within six months of issuance. Cohen wanted to keep the permit valid because development on the site was a "political hot potato in the neighborhood."

9. A lender visiting the site would not know the purpose of the demolition described above. Williamson testified that the demolition work may have appeared to have been done for at least the following reasons: (1) destruction of property by vandals; (2) demolition resulting from water damage; or (3) installation or removal of electrical equipment.

10. The demolition work performed under the 1984 permit was unrelated to the Ford Mall project. When FMALP undertook to develop the Ford Mall site, the 1984 permit was voided. A new permit was issued and took effect on December 26, 1986 ("December 1986 permit"). The December 1986 permit authorized construction and named Weis Builders as contractor. Whereas the 1984 permit specified the value of the work at $250,000.00, the December 1986 permit valued the work at $2,800,000.00. Weis Builders, the general contractor on the FMALP project, did not begin work until April 1987.

## B. Surveys

11. In early 1984, Cohen contacted Sunde Land Surveying ("Sunde") to conduct a boundary survey at the Ford Mall site for purposes of establishing the property corners. Sunde performed the survey and left the following designations on the property: (1) one parker kalon nail with a three-eighths inch (⅜″) head and one monument both pounded flush to the ground; (2) a cross etched into the concrete at one corner; and (3) paint marking the ·four corners of the property. The survey did not impact the property at all and a lender viewing the site would not have known that a survey had been performed. In fact, the cross mark on the concrete was removed in 1985 when the sidewalk was replaced, and there was no evidence presented at trial establishing that the paint spots were still visible in December 1986. Mark Hansen, a Sunde surveyor, testified that the purpose of the survey was for early design work. The survey was performed two years before FMALP and Pope Associates entered into a contract.

12. Sunde performed subsequent surveys which also failed to alter the site. In April 1986, Hansen again established the property boundaries because the sidewalks in front of the property had been changed. The markings were similar to the ones specified above, except that Hansen also left staking on the site, consisting of one three-foot stake with a flag. Hansen does not recall seeing any stake on the property when he revisited the site in December 1986. He also testified that stakes may disappear as soon as a few days after they are placed on a property.

13. Another survey was conducted at the request of Security Pacific, the lender from whom FMALP sought financing in the spring of 1986. The survey was certified to Security Pacific.

14. In December 1986, at the request of Metro Title and MWF, Mark Hansen conducted another boundary survey to confirm that there were no encroachments on the property and to remove the survey exception from the title policy to be issued by Lawyers Title Insurance Corporation ("LTIC"). Like the prior surveys, the December 1986 survey was not certified to and was not performed at the request of any contractor.

---

1. The space was formerly Pudge's Bar.

15. In September 1988, after the FMALP project was underway, John Pope, president of Pope, testified that FMALP and Weis Builders commissioned Schoell & Madson to perform a survey, which entailed posting stakes to assist in the construction of the project. The stakes were used by Weis Builders to determine the location of the new building on the property.

### C. Certification of No Prior Work

16. On December 29, 1986, Cohen and Joseph Weis, chairman of the board of the general contractor Weis Builders, on behalf of FMALP, executed a construction loan agreement certifying, among other things, that no prior work had been performed on the Ford Mall project:

21. *Article VI* ... NO PRIOR WORK— No work or construction has been commenced or will be commenced by or on behalf of Borrower on the Premises, nor has Borrower entered into any contracts or agreements for such work or construction which could result in the imposition of a mechanic's or materialmen's lien on the Premises or the Improvements prior to or on parity with the lien of the security interest evidenced by the Mortgage....

According to the sworn document, the surveys and demolition work that Cohen had previously ordered do not constitute prior work on the project. This admission is consistent with Pope's discovery responses conceding that the first visible improvement occurred on April 7, 1987.

17. In its answers to interrogatories, Pope Associates, through its attorney, stated that the first visible improvement was on April 7, 1987. Pope's attorney now argues that the court should disregard that admission because at the time the answers were drafted, Pope was unaware of the prior surveys and demolition. That contention, however, is contrary to the evidence presented at trial. The Sunde surveys performed in 1984 were conducted at the request of Pope's Mr. Klecker. Pope Associates is precluded from now claiming that it had no prior knowledge

of the surveys in an attempt to avoid the admission of its attorney.

### D. Actual Notice of Mortgage

18. On December 16, 1986, the president of Pope, John Pope, executed a certificate of project architect which specifically referenced the $8,625,000.00 mortgage loan from MWF Mortgage Corporation to FMALP covering the Ford Mall site.[2] The certificate provided that Pope Associates would comply with all building, zoning and use codes applicable to the project. John Pope testified at trial that he had executed a number of architect certificates in the past, and that he understood the purpose behind the December 16, 1986 certification when he signed it. He stated that the purpose of such certificates is to provide comfort to a lender that security interest that the lender was obtaining in the property would not be clouded with a defect arising from noncompliance with zoning and safety regulations. John Pope's awareness of that underlying purpose suggests that he was also aware that MWF had requested certification because MWF was going to obtain a security interest in the property.

19. On December 16, 1986, John Pope again executed a document specifically referencing the MWF mortgage loan. In an assignment of plans and specification and architects' contracts, Pope, on behalf of Pope Associates, agreed to assign to MWF its plans and specifications as well as the contract for architectural services entered between FMALP and Pope Associates on March 3, 1986.

20. As of December 16, 1986, Pope Associates was aware of MWF's mortgage loan to FMALP. It also was aware that the project went forward as Pope Associates was an integral part of development and construction of the project.

### E. The Accrual of Pope's Lien

21. The parties have stipulated that the first visible work on the Ford Mall project occurred no later than April 7, 1987.

---

2. John Pope testified that he received a certification from Security Pacific. Pope, however, never executed the certification.

22. Pope's services contributed directly to the construction of the building.

## CLAIM OF FIRSTAR ROSEVILLE

23. Prior to January 31, 1980, Esther Cohen was the fee simple owner of the property upon which the Ford Mall project subsequently was built ("Ford Mall property").

24. Under a contract for deed dated January 31, 1980, Esther Cohen, as vendor, agreed to sell the Ford Mall property to Growth Limited Partnership I ("Growth") as vendee. That contract for deed was filed February 1, 1980, as Document No. 688190 in the office of the Registrar of Titles for Ramsey County, Minnesota, and is Document No. 2070233 in the office of the County Recorder of Ramsey County.

25. Pursuant to the contract for deed, Esther Cohen remained "solely and exclusively liable to pay off and keep current the payments under any existing mortgage or mortgages or other refinancing specifically authorized hereby which is or are newly created or extended or refinance" on the Ford Mall property by Esther Cohen.

26. Under the contract for deed, Growth was to pay Esther Cohen out of "net cash receipts from rent generated out of the operations" of the Ford Mall property.

27. The payment amount required under the contract for deed was sufficient for Esther Cohen to make principal, interest and real estate payments to Twin City Federal, a mortgagee on the Ford Mall property. For nearly seven years, Growth made the payments required under the contract for deed. During that period of time, Growth made only six or seven payments that were insufficient, under the payment formula set forth in the contract for deed, to cover Esther Cohen's mortgage payments to Twin City Federal.

28. Between January 31, 1980 and December 29, 1986, Growth made sufficient payments under the contract for deed such that its interest as the vendee under the contract for deed was worth $610,000.

29. In December 1986, pursuant to the terms of a contract for sale between Growth and FMALP, Growth agreed to assign its entire right, title and interest as vendee under the contract for deed to FMALP.

30. Growth assigned its interest as vendee to FMALP by Growth's execution of a quit claim deed in favor of FMALP in December 1986.

31. On December 29, 1986, FMALP, under its agreement with Growth and under the contract for deed as the assignee of Growth, made the following payments to acquire the Ford Mall property:

| | | |
|---|---|---|
| (a) | Growth Limited Partnership I | $ 610,000.00 |
| (b) | Twin City Federal | $ 712,006.58 |
| (c) | Suburban National Bank | $ 260,000.00 |
| (d) | Esther Cohen | $ 52,993.42 |
| | TOTAL | $1,635,000.00 |

32. As of December 1986, mortgages against the Ford Mall property, for which Esther Cohen was liable pursuant to the terms of the contract for deed, were held by Suburban National Bank and Twin City Federal.

33. The payments by FMALP to Twin City Federal and Suburban National Bank, totalling $972,006.58, were made on behalf of Esther Cohen.

34. FMALP's payment of $52,993.42 to Esther Cohen in December 1986 satisfied all remaining payments owed to her under the contract for deed.

35. Thus, on December 29, 1986, FMALP paid to or on behalf of Esther Cohen a total of $1,025,000.

36. Pursuant to the contract for deed, Esther Cohen transferred her interest in the Ford Mall property to FMALP, as an assign-

ee of Growth, by delivering her warranty deed in favor of FMALP in December 1986.

37. On November 24, 1986, judgment was docketed in favor of the FirStar Roseville Bank ("FirStar") against Esther Cohen in the amount of $68,052.14.

38. On December 3, 1986, FirStar's judgment was entered as a memorial on the certificate of title pertaining to the Ford Mall property.

39. On January 21, 1987, FirStar received $35,000 on account of its judgment.

40. FirStar does not deny that FMALP paid fair value for the Ford Mall property.

## CONCLUSIONS OF LAW

I. *The Surveys and Staking Done Prior to December 1986 Do Not Constitute the First Actual and Visible Improvements*

Pope Associates contends that various surveys conducted prior to December 1986, one of which involved staking, constitute the first visible improvement, and thus its lien is prior to MWF's mortgage. Effective August 1, 1987, Minn.Stat. § 514.05 was amended to

3. That amended version, which is still in effect, provides that:

**When lien attaches; notice**
**Subdivision 1. Generally.** All liens, as against the owner of the land, shall attach and take effect from the time the first item of material or labor is furnished upon the premises for the beginning of the improvement, and shall be preferred to any mortgage or other encumbrance not then of record, unless the lienholder had actual notice thereof. As against a bona fide purchaser, mortgagee, or encumbrancer without actual or record notice, no lien shall attach prior to the actual and visible beginning of the improvement on the ground, but a person having a contract for the furnishing of labor, skill, material, or machinery for the improvement, may file for record with the county recorder of the county within which the premises are situated, or, if claimed under section 514.04, with the secretary of state, a brief statement of the nature of the contract, which statement shall be notice of that person's lien only.
**Subdivision 2. Exception.** Visible staking, engineering, land surveying, and soil testing services do not constitute the actual and visible beginning of the improvement on the ground referred to in this section. This subdivision does not affect the validity of the liens of a person or the notice provision provided in this chapter and affects only the determination of

provide that visible staking, engineering, land surveying, and soil testing services can not constitute the actual and visible beginning of the improvement on the ground.[3] Thus:

under the 1987 version of the statute, [engineering and land surveying] services cannot constitute the actual and visible beginning of an improvement even if they include visible staking of the property.

*Thompson Plumbing Co. v. McGlynn Cos.,* 486 N.W.2d 781, 784 (Minn.Ct.App.1992). Prior to that time, Minn.Stat. § 514.05 provided that:

engineering and land surveying services can constitute the actual and visible beginning of an improvement if the services include visible staking of the property.

*Id.*[4] Pope contends that the earlier version controls the present priority dispute, and RTC argues that the court should apply the 1987 amendment. The court does not resolve that dispute, however, based on its determination that the staking and surveys do not constitute the first visible improvement under either version of the statute.[5]

when the actual and visible beginning of the improvement on the ground, as the term is used in subdivision 1, has commenced.
Minn.Stat. § 514.05 (1992).

4. The prior version of the statute provides that:

Engineering or land surveying services with respect to real estate shall not constitute the actual and visible beginning of the improvement on the ground referred to in this section, except when such engineering or land surveying services include a visible staking of the premises.
Minn.Stat. § 514.05 (1986).

5. *In Thompson Plumbing Co. v. McGlynn Cos.,* the Minnesota Court of Appeals held that the 1987 amendment to Minn.Stat. § 514.05 does not apply retroactively. 486 N.W.2d 781 (Minn. Ct.App.1992). The *Thompson* court further determined that "courts should apply the law existing at the time the right to a lien accrues." *Id.* at 784 (citing *Hill v. Lovell,* 47 Minn. 293, 294, 50 N.W. 81, 81 (1891)).

It is unclear under Minnesota law, however, at what point in time a mechanic's lien actually accrues for purposes of determining the applicability of such amendments. The *Thompson* court held that the right to a mechanic's lien accrues at the time when the lienor's work is finished, and thus:

## A. The Staking and Surveys Are Not the First Visible Improvement under the 1987 Amended Version of Minn.Stat. § 514.05

The 1987 version of the statute clearly provides that the surveys and staking done prior to December 1986 do not constitute the first visible improvements as a matter of law. *Thompson*, 486 N.W.2d at 786 ("staking cannot constitute the actual and visible beginning of an improvement under the 1987 version of the statute").

## B. The Staking and Surveys Are Not the First Visible Improvement under the 1986 Version of Minn.Stat. § 514.05

■ In analyzing the priority dispute under the earlier version of the statute, Pope bears the burden of proving that the surveys and staking are sufficient to constitute the first visible improvement. *Resolution Trust Corp. v. Ford Mall Assocs. Ltd. Partnership*, 796 F.Supp. 1233, 1244 (D.Minn.1992). Examining the record, the court concludes that Pope failed to prove that the staking done prior to December 1986 was visible.[6] Thus, even if it were to apply the earlier version of Minn.Stat. § 514.05, the court nonetheless finds that the staking, and thus the surveys, were insufficient to constitute the first actual and visible improvement on the property.

*See Reuben E. Johnson Co. v. Phelps*, 279 Minn. 107, 156 N.W.2d 247, 251 (1968) (to satisfy § 514.05, staking "must . . . be visible; that is, a person using reasonable diligence in examining the premises must be able to see it" (emphasis in original)); *Jesco, Inc. v. Home Life Ins. Co.*, 357 N.W.2d 123, 127–28 (Minn.Ct.App.1984) (under earlier version of Minn.Stat. § 514.05, staking or surveying work must be visible).

In construing the earlier version of Minn. Stat. § 514.05, the *Thompson* court also held that:

> the act of staking [must be] attributed only to the improvement contemplated by the staking party, and not to any subsequent improvement contemplated by a different party.

*Thompson*, 486 N.W.2d at 786–87 (rejecting interpretation of § 514.05 set forth in *R.B. Thompson, Jr., Lumber Co. v. Windsor Dev. Corp.*, 383 N.W.2d 362, 367 (Minn.Ct.App. 1986)). Thus, surveys and staking must also be related to the improvement to which the lienor contributes before it may constitute the first visible and actual improvement for purposes of the 1986 version of the statute. *Id.* at 786–87; *see also National Lumber Co. v. Farmer & Son, Inc.*, 251 Minn. 100, 87 N.W.2d 32, 36 (1957) (in order to determine the first visible improvement, the key inquiry is "whether or not the improvement bears

the law applicable to [a] case is the law existing at the time the work was finished. *Id.* Other courts have held, however, that for purposes of analyzing priority "as against a bona fide mortgagee, a lien attaches at the actual and visible beginning of the improvement of the ground." *Carlson–Grefe Constr., Inc. v. Rosemount Condominium Group Partnership*, 474 N.W.2d 405, 409 (Minn.Ct.App.1991) (citation omitted); *see also C.S. McCrossan, Inc. v. Builders Fin. Corp.*, 304 Minn. 538, 232 N.W.2d 15, 19 (1975) (Minn.Stat. § 514.05 "contemplates . . . that the priority issue may be determined as of the date of the beginning of the first improvement").

In the present case, it is undisputed that the first visible improvement occurred on April 7, 1986, suggesting that Pope's lien attached no later than that date. *See Carlson–Grefe Constr., Inc.*, 474 N.W.2d at 409; *Witcher Constr. Co. v. Estes II Ltd. Partnership*, 465 N.W.2d 404, 406–07 (Minn.Ct.App.1991) (if lienor's work is performed as part of one single improvement, its mechanic's lien accrues on the date on which first visible improvement occurs). Evidence at

trial indicated that Pope did not finish its work until late 1988, and thus under *Thompson*, the 1987 amendment would apply. 486 N.W.2d at 784.

The court, however, does not resolve the apparent conflict based on its determination that in the present case, the staking and surveys do not constitute the first visible improvement under either version of the statute.

6. For example, Mark Hansen, Sunde's land surveyor, testified that he did not use any staking when conducting the 1984 survey, that the markings he used did not impact the property at all and that a lender viewing the site would not know that a survey had been performed.

His testimony concerning the April 1986 survey indicated that in addition to making some markings that were similar to those used in the 1984 survey, he used only one stake, that such a stake may disappear within a few days after it is placed on the property and that he did not recall seeing the stake when he revisited the site in December 1986.

directly on the construction of the building rather than whether it is a part of the overall project involved").

Even if the staking and other survey markings were visible, the court determines they do not constitute the first actual and visible improvements because they were unrelated to the construction of the Ford Mall by FMALP. In making this determination, the court relies on the following facts:

(1) no financing was in place prior to December 2, 1986;

(2) FMALP was not formed for purposes of the project until December 17, 1986;

(3) the contract between FMALP and its contractor, Weis Builders, was not signed until December 1986, and there was no evidence of an earlier contract with any other contractor;

(4) the building permit for the site was not valid until December 26, 1986;

(5) Ford Mall Associates did not contract with Pope Associates until March 1986;

(6) FMALP certified at closing that no prior work has been conducted on the project; and

(7) no title to the property was conveyed to FMALP until December 1986, when Growth Property Partners conveyed title to FMALP.[7]

The court thus concludes that the staking and surveys done prior to December 1986 do not constitute the first visible improvement under the earlier version of Minn.Stat. § 514.05.

## II. The Demolition Work Does Not Constitute the First Visible Improvement

■ Pope also contends that demolition work performed by Kraus–Anderson on two occasions, March 18, 1985 and September 26, 1985, constitutes the first visible improvement under Minn.Stat. § 514.05. As previously discussed, in order to constitute the first visible improvement, Pope bears the burden of proving that the demolition work

was related to the construction of the Ford Mall project by FMALP. *See Resolution Trust Corp. v. Ford Mall Assocs. Ltd. Partnership,* 796 F.Supp. at 1244; *Carr–Cullen Co. v. Deming,* 176 Minn. 1, 222 N.W. 507, 507–08 (1928) (merely removing old building from site was insufficient to constitute first visible improvement where the removal was unrelated to lienor's project); *Lamoreaux v. Andersch,* 128 Minn. 261, 150 N.W. 908, 909 (1915) (survey and demolition of barn were not first visible improvements because they were done independently of construction project on which architects had lien).

The court finds that the minor demolition work performed by Kraus–Anderson on behalf of Harvey Investments does not constitute the first visible improvement pursuant to Minn.Stat. § 514.05 for the following reasons:

(1) The sole purpose of the demolition work in 1985 was to maintain the 1984 demolition permit issued to Harvey Investments;

(2) The 1984 permit did not involve Weis Builders, the contractor for the FMALP project. Rather, Kraus–Anderson was named as the contractor for the 1984 permit;

(3) FMALP's contractor, Weis Builders, did not perform any demolition work in 1985; Kraus–Anderson performed that demolition work; and

(4) The 1984 permit set the value of the projected work at $250,000. The 1986 permit covering the FMALP project valued the work at $2,800,000—showing that the FMALP project is a separate, much larger project than that contemplated in the 1984 permit.

Because the demolition work was performed by parties unrelated to the FMALP project and for reasons other than construction of the FMALP project, the court finds that the demolition work done on March 18, 1985 and September 26, 1985 does not constitute the first visible improvement.

---

7. Although Mark Hansen, a surveyor with Sunde, testified that the 1984 survey was done for purposes of early design work, the court notes that the 1984 survey was performed two years before Ford Mall Associates entered into a contract with Pope, and more than two years before FMALP was formed and purchased the Ford Mall site. The court thus concludes that the 1984 survey was unrelated to the construction on Ford Mall by FMALP.

## III. Pope Associates Had Actual Notice of MWF's Mortgage

■ As set forth above, the court determines that the surveys, staking and demolition on which Pope seeks to rely do not constitute the first visible improvements. In the event that the court reached that conclusion, the parties have stipulated that first visible improvement for purposes of Minn. Stat. § 514.05 occurred as of April 7, 1987. It is further undisputed that MWF's mortgage was executed on December 29, 1986 and recorded on July 6, 1987. Thus, the first visible improvement occurred before MWF's mortgage was recorded.

Under Minn.Stat. § 514.05, a claimant whose mechanic's lien attaches prior to the recording of a mortgage has priority unless it is shown that the lien claimant had actual notice of such mortgage. Pursuant to the court's order of January 30, 1992, RTC bears the burden of proving that Pope had actual notice of MWF's mortgage. *Resolution Trust Corp. v. Ford Mall Assocs. Ltd. Partnership*, 796 F.Supp. at 1244. As the court noted in its order of March 27, 1991, although actual notice of a mortgage is required, such notice may be proven by circumstantial evidence. *Resolution Trust Corp. v. Ford Mall Assocs. Ltd. Partnership*, 819 F.Supp. at 843 n. 23 (D.Minn.1991) (citing *Anderson v. Iverson Outdoor Life*, 187 Minn. 308, 245 N.W.365, 366 (1932)).

It is undisputed that on December 16, 1986, John Pope, on behalf of Pope Associates, executed a certificate of project architect and a consent to assignment of plans and specifications and architect's contracts, both of which specifically reference MWF's mortgage, which was executed a few days later. Pope contends, however, that it did not have actual notice of MWF's mortgage, relying on two cases: *Comstock & Davis, Inc. v. G.D.S. & Assocs.*, 481 N.W.2d 82 (1992) and *Jadwin v. Kasal*, 318 N.W.2d 844 (Minn.1982). The court finds *Comstock & Davis, Inc.* distinguishable because it reversed a finding of actual notice which was based solely on imputed knowledge "of some financing arrangement" arising from a lienor's "generalized knowledge derived from 35 years of experi-

ence as a surveyor." 481 N.W.2d at 84. In the present case, however, John Pope signed two documents that specifically referenced the MWF mortgage. The certificate of project architect signed by Pope is actually captioned:

Re: $8,625,000 Mortgage Loan

Borrower: Ford Mall Associates Limited Partnership

Lender: MWF Mortgage Corporation

The *Jadwin* case is similarly distinguishable because it analyzed the priority of a mortgage that did not exist at the time when the mechanic's lien attached. The *Jadwin* court held that the actual notice exception was not satisfied by a lienor's knowledge of mortgage negotiations that occurred prior to the attachment of the mechanic's lien where the mortgage was not executed until after the mechanic's lien attached. 318 N.W.2d at 848–49. In the present case, however, it is undisputed that the mortgage was executed long before date on which the stipulated first improvement occurred, April 7, 1987, that John Pope signed two documents specifically referencing the mortgage, one of which detailed the amount, the borrower and the lender, and that Pope Associates was aware that the project went forward because it played an integral part in the development and construction of the project. Under such circumstances, the court finds that *Jadwin* is distinguishable.

Based on the foregoing, that court determines that John Pope's signing of two documents that specifically referenced the mortgage, even though they were signed before the mortgage was actually executed, is sufficient to satisfy the actual notice requirement of Minn.Stat. § 514.05. The court thus concludes that Pope Associates' lien is junior to MWF's mortgage.

## IV. FirStar's Judgment Against Esther Cohen is Not a Valid Lien

■ Under *Berryhill v. Potter*, 42 Minn. 279, 44 N.W..251 (1890), a judgment lien filed against a vendor is subordinated to the interests of a vendee under a contract for deed, if the contract for deed is recorded before the judgment lien. Under such circumstances,

the judgment lien attaches only to the vendor's remaining legal interest in the property and becomes a nullity against the property after the vendor transfers the remaining legal interest to his vendee. *Id.* at 251.

■ The *Berryhill* rule has become a title standard promulgated by the Real Property Section of the Minnesota State Bar Association:

A judgment or federal or state tax lien docketed or filed against a contract vendor subsequent to the recording of the contract for deed may be disregarded by an examiner of the interest of the contract vendee or the vendee's assigns.

Title Standard No. 90. Thus, under Minnesota law, a judgment docketed or filed against a contract vendor after the contract for the sale of property has been duly recorded is not a lien against the property in relation to the contract vendee or its assigns.

The contract for deed for the sale of the Ford Mall property was executed and recorded in 1980, over six years before FirStar's judgment was docketed and recorded in 1986. Growth retained a vendee's interest continuously from January 1980 until the date on which it assigned its interest under the contract for deed to FMALP. FMALP, as Growth's assignee, performed under the contract for deed and obtained a warranty deed to the Ford Mall project from Esther Cohen. Thus, FMALP's performance, as assignee of Growth, has the legal effect of occurring in 1980. Based on the foregoing, the court concludes that FirStar does not have a valid judgment lien against the Ford Mall property.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The following documents, all dated December 29, 1986, and executed and delivered by defendants Ford Mall Associates Limited Partnership, Milton Cohen and Joseph Weis to plaintiff RTC or its predecessors, are valid instruments enforceable according to their terms: the promissory note ("note") in the face amount of $8,625,000.00; mortgage and security agreement and fixture financing statement ("mortgage"); assignment of leases and rents ("assignments"); construction loan agreement ("loan agreement"); and guaranty of Milton Cohen and Joseph Weis ("guaranty").

2. Pursuant to the terms of the note, mortgage, assignments and loan agreement, Ford Mall and Weis agreed to pay certain monthly installments of principal and interest to plaintiff RTC or its predecessor in interest. There has been default pursuant to the terms of the note and mortgage, assignment, loan agreement and guaranty, and pursuant to the terms thereof there is due and owing principal in the amount of $7,067,818.39, and interest and late charges accrued through February 1, 1993, in the amount of $3,022,-638.99, together with interest due pursuant to the terms of the note and mortgage from February 2, 1993, until the entry of judgment at the interest rate provided in the note, and costs and attorneys' fees incurred through December 31, 1992, in the amount of $1,185,-641.40, with costs and attorneys' fees incurred thereafter to be reserved.

3. Judgment shall be entered against defendants Ford Mall Associates Limited Partnership and on the guaranty against Milton J. Cohen, and in favor of plaintiff RTC, in the amount established pursuant to paragraph 2 of this order.

4. The mortgage, which has been recorded and is described as follows:

Ford Mall Associates Limited Partnership, as Mortgagor, in favor of MWF Mortgage Corporation, as mortgagee, dated December 29, 1986, filed on July 6, 1987, as Document Number 2390670 in the office of the County Recorder in and for Ramsey County, Minnesota, and filed on July 22, 1987, as Document Number 843628 in the office of the Registrar of Titles in and for Ramsey County, Minnesota, as amended and assigned,

constitutes the first and prior lien on the land and property therein described, prior and superior in all respects to any and all rights therein of all defendants herein.

5. Pope Associates, Inc. mechanic's lien is junior to the lien of the mortgage of Resolution Trust Corporation in its capacity as receiver for Midwest Savings Association, F.A., described in paragraph 4 above.

6. The judgment lien of Roseville Bank, n/k/a FirStar Roseville Bank, is not a lien on the property, and as a nullity, vis-a-vis the encumbered property described in paragraph 7 below, is hereby removed.

7. The mortgage shall be foreclosed on the encumbered real estate, legally described as follows:

Lots 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29 and 30, Block 8, St. Catherine Park, according to the recorded plat thereof, Ramsey County, Minnesota

and other property encumbered by the mortgage is hereby directed to be sold as provided by Minn.Stat. §§ 581.03 and 336.9–501 by the Sheriff of Ramsey County and the application of the proceeds thereof after deduction of the costs thereof shall be distributed as provided by statute.

8. The Sheriff of Ramsey County shall report such sale to the court with all convenient speed and upon confirmation of the sale by the court the Sheriff shall apply the proceeds of the sale first to the payment of the costs and expenses of such sale, then to the costs and attorneys' fees adjudged due under the note and mortgage, then to payment of accrued interest adjudged due under the note and mortgage, then to the payment of the principal amount herein adjudged due under the note and mortgage and unpaid as of the date of such sale. Thereafter he shall pay the overplus, if any, to the persons entitled thereto pursuant to Minn.Stat. § 581.06 and that he execute to the purchaser at said sale a certificate of sale thereof according to law.

9. The Ramsey County Sheriff, or his duly authorized deputy, in conducting such sale shall offer the property for sale and the highest bid received, for cash, shall be accepted. If plaintiff RTC is the successful bidder at each sale, the amount bid by plaintiff RTC may be used as the equivalent of cash.

10. Execution shall issue against defendant Milton J. Cohen, to the extent that the judgment entered pursuant to paragraphs 2 and 3 above is not fully satisfied by the proceeds of the foreclosure sale adjudged and directed herein.

11. All defendants and all persons claiming under them are hereby barred and foreclosed from any equity of redemption or interest in the property except the right to redeem as provided by statute from the sale herein adjudged and directed.

LET JUDGMENT BE ENTERED ACCORDINGLY.