30 F.3d 93
 RESOLUTION TRUST CORPORATION, in its capacity as Receiver
for Midwest Savings Association, a federal
association, Appellee,
v.
FORD MALL ASSOCIATES, LIMITED PARTNERSHIP, a Minnesota
partnership; Haskell's, Inc., a Minnesota
corporation; Milton Cohen, Joseph Weis,
Defendants.
Pope Associates, Inc., Appellant.
The Roseville Bank, formerly doing business as FirStar
Roseville, Defendants.
 No. 93-3132.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 12, 1994.
Decided July 21, 1994.
 
 James Lindell, Minneapolis, MN, argued, for appellant.
 Elmer Trousdale, Minneapolis, MN, argued, for appellee.
 Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Pope Associates, Inc. (Pope Associates), appeals from a final order entered in the District Court[1] for the District of Minnesota holding that its mechanic's lien for architectural services is junior to Resolution Trust Corp.'s (RTC) mortgage. Resolution Trust Corp. v. Ford Mall Assocs. Ltd. Partnership, 819 F.Supp. 845 (D.Minn.1993). For reversal, Pope Associates argues the district court erred in finding that its president, Jon Pope, had actual notice of the RTC mortgage. For the reasons discussed below, we affirm the order of the district court.
 
 
 2
 This case arises from a defaulted 8.6 million dollar construction mortgage. Ford Mall Associates Limited Partnership (FMALP) was formed to develop the Ford Mall complex in St. Paul, Minnesota. FMALP sought financing from several potential lenders, finally receiving a commitment from MWF Mortgage Corporation (MWF), on December 4, 1986. MWF is a wholly owned subsidiary of Midwest Federal Savings & Loan Association (Midwest Federal), for which RTC is the receiver.
 
 
 3
 Pope Associates was the project architect for the Ford Mall complex. On December 16, 1986, the president of Pope Associates, Jon Pope, on behalf of the corporation, signed two documents specifically referencing the eight million dollar mortgage between FMALP and MWF. The district court found that Jon Pope signed these documents knowing "the purpose of such certificate is to provide comfort to a lender that a security interest that a lender was obtaining in the property would not be clouded with a defect arising from noncompliance with zoning and safety regulations." 819 F.Supp. at 850. The first document, called "Certificate of Project Architect" (Project Architect document), certified compliance with building, zoning and use codes applicable to the project. The Project Architect document specifically named MWF as lender, and FMALP as borrower. The second document was an "Assignment of Plans and Specifications and Architect's Contracts" (Consent to Assignment) referencing the same construction loan between FMALP and MWF. Jon Pope testified that, at an earlier time, he had signed different Consent to Assignment and Project Architect documents on behalf of FMALP in order to help FMALP apply for financing from other potential lenders.
 
 
 4
 The mortgage between FMALP and MWF was executed on December 29, 1986. The parties do not dispute that Pope Associates' mechanic's lien attached April 7, 1987, at the first visible sign of improvement at the Ford Mall construction site. Pope Associates, however, claims that when its mechanic's lien attached, Jon Pope had no actual knowledge that the construction mortgage between FMALP and MWF had been executed, although he knew the project went forward beyond December 16, 1986. For example, Pope Associates was paid by FMALP through August 1987, continued to do a great deal of work for the Ford Mall project in 1988, and was aware that other subcontractors were also working at the Ford Mall site. MWF did not record the mortgage until July 6, 1987.
 
 
 5
 Construction work at the Ford Mall project started in April of 1987. The project suffered a few set backs when work was stopped due to several temporary restraining orders obtained by tenants against FMALP. Those lawsuits were settled in April 1988, although the delays in construction led to increased financial difficulties for the Ford Mall project. Consequently, FMALP requested additional funding from MWF, but was denied. By October 1988, FMALP began missing monthly mortgage payments. Both parties attempted, but failed, to resolve the loan problems, and, in January 1989 MWF formally declared the loan in default and soon after began foreclosure proceedings. Pope Associates' lien was among some 4 million dollars in mechanic's liens on the project for labor, materials and equipment.
 
 
 6
 The parties stipulated that Pope Associates had a valid mechanic's lien in the amount of $28,876.61. The district court held that RTC's mortgage lien was superior to the mechanic's lien under Minn.Stat.Ann. Sec. 514.05 (West 1990) because Pope Associates had actual notice of RTC's mortgage prior to the first visible sign of improvement, thus falling within the actual notice exception to priority. 819 F.Supp. at 855. For reversal, Pope Associates argues the district court erred in finding that it had actual knowledge of the mortgage and seeks priority of its mechanic's lien over the mortgage lien asserted by RTC.
 
 ACTUAL NOTICE
 
 7
 It is undisputed that Pope Associates' mechanic's lien attached at the first sign of visible improvement at the Ford Mall construction site on April 7, 1987. Generally, under Minn.Stat.Ann. Sec. 514.05, a mechanic's lien has priority over all unrecorded mortgages. An exception to this rule exists when the mechanic's lienor had actual notice of an executed but unrecorded mortgage at the time the lien attached; under those circumstances priority is given to the executed but unrecorded mortgage. Jadwin v. Kasal, 318 N.W.2d 844, 848 (Minn.1982) (Jadwin ).
 
 
 8
 The district court found that Pope Associates had actual notice of RTC's mortgage because Jon Pope signed two documents that specifically referenced the mortgage, and he knew that the project went forward because Pope Associates had played an integral part in the development and design of the project. 819 F.Supp. at 855. We review the district court's finding that Pope Associates had actual notice of the mortgage under a clearly erroneous standard of review. Therefore, reversal is proper only if the decision was "unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." United States v. Jorgensen, 871 F.2d 725, 728 (8th Cir.1989); see Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Pope Associates argues Jon Pope did not have actual notice of the mortgage based upon Minn.Stat.Ann. Sec. 514.05 and case law. Additionally, Pope Associates argues that the signing of the two documents can not constitute actual knowledge of the mortgage because, at the time those documents were executed, the mortgage had not been executed and thus did not exist. Pope Associates further argues that the documents, plus others of its kind, were part of a preliminary application to obtain financing, and not an executed agreement between MWF and FMALP.
 
 
 9
 Pope Associates relies on Jadwin to support its argument that Jon Pope did not have actual notice of the mortgage. In Jadwin, the mechanic's lien attached before the mortgage had been executed or recorded. The Jadwin court held that the language of Minn.Stat.Ann. Sec. 514.05 "requires notice of an existing encumbrance on the land and not merely negotiations leading up to it." 318 N.W.2d at 848. The court refused to extend the actual notice exception to unexecuted and unrecorded mortgages still in the negotiation stage. Id. Accordingly, Pope Associates argues the documents Jon Pope signed cannot be used as proof of actual notice because, as of December 16, 1986, the mortgage was only in the negotiation stage.
 
 
 10
 The district court distinguished Jadwin on the ground that, in Jadwin, the mechanic's lien attached before the mortgage had been executed or recorded. 819 F.Supp. at 855. In the present case, however, the mechanic's lien attached after the mortgage had been executed, but before it had been recorded. We agree with the district court that Jadwin is distinguishable from the facts of the present case because the mortgage here was executed December 29, 1986, prior to the attachment of Pope Associates' mechanic's lien on April 7, 1987. We further find unpersuasive Pope Associates' argument that, because no mortgage existed at the time Jon Pope signed the documents, he could not have had actual notice of the mortgage lien. At the time Pope Associates' mechanic's lien attached in April 1987, Jon Pope not only knew that FMALP had sought financing from MWF, but also knew that the project had gone forward from the time the documents were signed. Pope Associates was an integral part of the project development and was therefore able to observe other subcontractors working at the Ford Mall site. In addition, Pope Associates was paid by FMALP through August 1987 and did substantial work for the Ford Mall project in 1988. Under these circumstances Pope Associates must have known that the MWF mortgage application was no longer in the negotiation stage, but rather had been executed.
 
 
 11
 Pope Associates further relies on Comstock & Davis, Inc. v. G.D.S. & Assocs., 481 N.W.2d 82 (Minn.Ct.App.1992) (Comstock & Davis ), to support its argument that Jon Pope did not have actual notice that MWF's mortgage to FMALP had been executed by the time their mechanic's lien attached. In Comstock & Davis, the mortgage was executed, though not recorded, before the mechanic's lien attached. The court held that imputed or general knowledge of some financing arrangement does not satisfy the actual notice requirement for purposes of Minn.Stat.Ann. Sec. 514.05. 481 N.W.2d at 84. The court concluded that a lienholder's 35 years of experience was too general to satisfy the actual notice standard. Id. We agree with the district court that Comstock & Davis is distinguishable from the present case because the two documents signed by Jon Pope specifically referred to the loan between MWF and FMALP, therefore showing more than merely general knowledge of financing arrangements. 819 F.Supp. at 855.
 
 
 12
 In sum, we hold that the district court's finding that Pope Associates had actual notice of the mortgage between MWF and the FMALP is not clearly erroneous.
 
 
 13
 Accordingly, we affirm the order of the district court.
 
 
 
 [1]
 The Honorable David S. Doty, United States District Judge for the District of Minnesota